## In re Dancy Drainage District.

*April 11—May 3, 1927.*

*Appeal and error: Law of the case: Questions necessarily decided on former appeal: Drainage districts: Priority of bonds.*

1. Where this court, in determining a former appeal between holders of bonds and others interested in a drainage district, held that the first issue of bonds was a lien upon the entire assessment of benefits, and that the holders of these obligations had a paramount right to resort to the lands in the district to the extent of the assessment of benefits as security to their debt, such holding became the law of the case in all future proceedings.  p. 121.

2. The securities of holders of the first issue of drainage district obligations could not be altered by subsequent proceedings or by the issue of other obligations without their consent.  p. 122.

Appeal from an order of the circuit court for Marathon county: A. H. Reid, Circuit Judge.  *Reversed.*

Proceedings for the disposition of a fund held by the commissioners of the *Dancy Drainage District.*

The affairs of this drainage district were before this court in 190 Wis. 327, 208 N. W. 479.  After the record was returned an order was made for an additional assessment of $130,000, now in process of collection.  Thereafter and in August, 1926, *Laura R. Gorton,* owner of two $500 bonds of the district dated November 15, 1907, due June 1, 1922, and with unpaid interest coupons thereon due at six-months intervals from December, 1919, petitioned for payment.  The *Federal Life Insurance Company* and the *Loyal American Life Association,* who were the petitioners and appellants in the former case, one *Christopher Graham* and the *Hanchett Bond Company,* all holding bonds of the issue of 1907, and the latter also holding other bonds of later issue, intervened and were heard on the questions as to the manner in which a fund then held by the commissioners should be disbursed. This fund was $1,091.09 in the "interest and bond account,"

but such moneys could not be identified as coming from any particular prior assessment or collection.

Many of the facts concerning this district, the form of.the first issue of the bonds, and the statutes involved in the construction thereof are found in the former decision and need not be here repeated.

The. following facts are now in the record:

Under the original proceedings in 1907 one assessment of benefits amounting to $440,000 was made on the entire drainage district and there was then levied an assessment for construction purposes of $140,460.50. Against this, by order of the court, a series of negotiable instruments were issued, all bearing date November 15, 1907, maturing annually in equal instalments from June 1, 1913, until and including June 1, 1922. Of this issue $136,000 worth were sold. There has been paid thereon $95,500, leaving an unpaid principal of $40,500, of which $26,500 was represented by the petitioners on the hearing below.

A second construction assessment was made in August, 1910, for $35,115.10, against which obligations were issued maturing substantially as those of the first issue and to the amount of $34,000. This issue recited in each obligation that it "is based upon and constitutes a lien upon and is payable solely out of the proceeds of the special assessment for benefits authorized by order of the court on August 1, 1910, upon the lands in said district, and also as a second lien, subject to prior issue of bonds, upon first assessment made November 5, 1907, both of which assessments are hereby irrevocably pledged therefor."

This $34,000 issue was sold, $24,800 thereof paid, leaving unpaid $9,200. No holders of such obligations seem to have appeared or been represented on the hearing below.

The third, or what is called the Howe Creek sub-district issue, was made by order of August 17, 1914, dated as of June 11, 1914, authorizing an additional assessment of over

In re Dancy Drainage District, 193 Wis. 118.

$38,000 upon the land in that sub-district.  This issue was divided into seven equal interest instalments, payable annually from November 5, 1915, all bearing interest from November 5, 1914.  Such order subsequently, but without notice to any parties, amended, contained the following recital:

"This bond is based upon, and constitutes a lien upon, and is payable solely out of the proceeds of the special assessment for benefits authorized by order of the court on June 11, 1914, upon the lands in the Howe Creek sub-district."

Of this issue $37,000 worth were sold, $14,000 thereof paid, leaving unpaid $23,000.  The total of unpaid obligations of the three issues is $72,700.  There was a refunding and the giving of new obligations for some such originals, but the record is not definite as to the amount.

The trial court determined that the *Loyal American Life Association* and *Federal Life Insurance Company* and *Christopher Graham,* holders of the obligations of the first issue, must be denied their claim of prior lien upon the particular fund.

It was further ordered that the said $1,091.09 be applied to the payment of the earliest due unpaid interest coupons and principal of bonds of the first and second issues, paying in the order of the maturity thereof, with provision as to prorating where necessary.

Except as so ordered the prayers of the respective petitioners were denied.

By written decision the trial court expressed the opinion that the obligations of the district are not a lien upon the assessments for benefits, and that, it being impossible to trace the source of the fund then in the hands of the commissioners, it must be applied in accordance with the equitable rule for the applying of payments upon notes falling due at different times secured by the one mortgage, and therefore that the fund should be applied to the longest past-due

security, whether interest coupons or the principal of the bonds themselves. Further information being required as to what were the earliest-due interest coupons or bonds now unpaid, no exact provision could be made in the original order for distribution.

From such order the insurance companies and *Graham* appeal.

For the appellants *Federal Life Insurance Company, Loyal American Life Association,* and *Christopher Graham* there were briefs by *Mason & Priestley* of Madison, attorneys, and *Simeon W. Dixon* of Chicago, of counsel, and oral argument by *T. M. Priestley.*

*B. M. Vaughan* of Wisconsin Rapids, for the *Hanchett Bond Company.*

For the respondent *Drainage Commissioners* the cause was submitted on the brief of *Bird, Smith, Okoneski & Puchner* of Wausau.

ESCHWEILER, J.   One of the contentions presented on this appeal, namely, whether or not the first issue in 1907 of the obligations of the district became, were, and are prior, paramount, and first liens upon the assessment for benefits as then made on the entire district, was a question squarely presented on the first appeal and necessarily then and there determined and in the affirmative, and became and is the law of the case as between those interested in this drainage district and the holders of the first series of obligations.

Although particular stress is now laid by counsel for holders of unpaid obligations of the third issue upon the language of sub. (2), sec. 89.35, Stats., to the effect that assessments for construction, additional assessments, and assessments for repairs and interest thereon shall be *a first lien* upon the lands assessed and take precedence over all other liens and mortgages, and upon the suggested force to be given to the distinction arising because of the statute speaking of the

*lien* created as in the singular number and of the various *assessments* in the plural, that thereby is shown a legislative intent that there should be but one lien, as to which all of the various assessments should stand in equality, with priority to none, yet that cannot change the rule laid down in the prior decision, *supra*.

This precise statute now relied upon was necessarily before the court in the former appeal. There it was expressly held (p. 333) that the legislative scheme under the entire chapter governing this subject, whether so in terms expressed or not, included the right, in connection with such obligations, of having additional assessments levied up to the limit placed by the assessment of benefits and for the purpose of the payment of principal and interest due on lawful debts. This negatives the view expressed by the trial court in his written decision and embodied in so much of the order as denied a priority to the first issue of obligations.

It is true it was not in the first opinion expressly stated that the obligations of November, 1907, were prior and paramount to the subsequent obligations of 1910 and 1914, but when it was there held, as it was, that such first issue was a lien upon the entire assessment of benefits and that the holders of such obligations had pledged to them as their security the lands in the district to the extent of the assessment of benefits, it was necessarily a determination and holding that the holders of the first issue of obligations, having had such security pledged to them, were necessarily holders of a paramount right to such security. The full extent of such security being thus pledged, such paramount security could not be altered or lessened by subsequent proceedings or by subsequent issue of other obligations by the district without the consent of the holders of such first issue. Such was the effect and scope of the first decision, 190 Wis. 327, 208 N. W. 479, and it necessarily controls this proceeding and requires a holding that the unpaid obligations of the first issue

are a prior and paramount lien on the assessments lawfully levied in this district.

A similar conclusion was reached under a somewhat similar statutory proceeding in Florida, in *Krietmeyer v. Baldwin D. Dist.* 13 Fed. (2d) 903.

Many other questions are presented by the respective parties interested in this appeal and we are urged to determine them for the future guidance of the commissioners in distribution of the funds of this district. We regret that because of lack of sufficient facts and necessary and proper parties we cannot do so.

Among such is, what effect any of the particular statutes of limitations have upon the obligations of the district, either those for unpaid principal or for unpaid interest, whether represented by unpaid coupons or instalments due after maturity of the particular obligations. In the opinion on the former appeal, 190 Wis. 327, 208 N. W. 479, *supra,* the obligations of the district under the first issue of 1907 and then before the court were treated by the parties in their briefs and arguments here and by the language of the decision as bonds rather than as unsealed promises to pay. None of such issue of 1907 were then or are now in the record. Whether such were sealed or unsealed obligations was not then before the court. It is now treated as a conceded fact that all the promises to pay based upon the proceedings of 1907, the so-called first issue, are without any seal, scroll, or other device indicating the intention to make them sealed instruments as at common law or under sec. 235.17, Stats. It is also now suggested that some at least of the subsequent issues of obligations are sealed instruments or may be claimed to be such, but none such, either, are in the record.

Under the drainage district law the commissioners were expressly given, under their authority to borrow money, the power to issue *notes* or *bonds,* and these words, connoting in the law substantially different forms of obligations or

promises, are found so together in many provisions of this chapter. The order directed the execution of the obligations of the district to be evidenced by the signatures of the three commissioners and that the attached interest coupons should be executed by their lithographed facsimile signatures. The drainage district as such, or the commissioners, are nowhere expressly given the power or authority to adopt a seal or any device as a substitute therefor, nor do we find any general statute authorizing such a *quasi*-municipal corporation with its limited powers (*McMahon v. Lower Baraboo River D. Dist.* 184 Wis. 611, 614, 200 N. W. 366) to adopt a seal other than may be embodied in the power above mentioned given to them of issuing bonds.

The questions, therefore, whether the commissioners should, because of some statute of limitation, refuse to pay outstanding obligations of the district, whether for the principal, unpaid interest coupons, or unpaid interest on past-due obligations; and whether the special six-year limitation as to obligations of certain designated municipalities as provided in sub. (2), sec. 330.19, Stats., the general six-year limitations (sub. (3) and (4), sec. 330.19), or the twenty-year statute (sub. (2), sec. 330.16), should apply; whether there should be recognized a distinction between instalments of unpaid interest represented by an unsealed coupon whether attached to a sealed obligation or an unsealed instrument and unpaid instalments of interest on past-due obligations, some of which distinctions are passed upon in *Koshkonong v. Burton,* 104 U. S. 668, 673, we must now decline to determine.

We take the same attitude in refusing to now determine whether or no the so-called third issue, or the Howe Creek sub-district obligations of 1914, are invalid. The trial court properly refused to pass upon this question because it was not before him under the record as there presented and, as he suggested, occasion for determining it may never arise.

The commissioners of the drainage district, who are per- forming the thankless task of trying to collect additional funds out of what is conceded to be a hopelessly insolvent district, for it is also conceded that a large proportion of the land involved has been sold for unpaid assessments, are with- out funds or apparent possibility of obtaining any for pay- ing the necessary expenses in carrying on the further pro- ceedings as required by the order levying additional assess- ments or the evidently required proper disbursements for counsel, and they have asked for relief in that regard.

No definite suggestion is made as to how this sad cry for help can be now answered by this court, and we can do no more than to suggest the propriety, upon this record being returned to the circuit court upon this reversal, that the small fund now in the hands of the commissioners be held for further proceedings and until the affairs of the district are in a more definite condition for more substantial or final disposition. The amount is so insignificant as a payment *pro rata* among the holders of the first issue of obligations, assuming that such are all now proper for payment, that it would seem equitable to presently hold such fund subject to its being possibly treated and applied, as it might be in cases of other insolvent or bankrupt institutions, for necessary ad- ministration expenses. Such question, however, must await further proceedings.

*By the Court.*—Order reversed, and cause remanded for further proceedings.