IN RE WOOD COUNTY DRAINAGE DISTRICT : WOOD COUNTY, Respondent, vs. WOOD COUNTY DRAINAGE DISTRICT and another, Appellants.

*March 6—April 1, 1930.*

For the respondent there was a brief by *M. S. King,* district attorney for Wood County, and *Goggins, Brazeau & Graves* of Wisconsin Rapids, special counsel for Wood County, and oral argument by *R. B. Graves.*

OWEN, J. The petition of Wood County disclosed a situation with reference to the affairs of the Wood County Drainage District very similar to that existing in the Dancy Drainage District, as disclosed in the case of *In re Dancy Drainage District,* 193 Wis. 118, 213 N. W. 885, and again in 199 Wis. 85, 225 N. W. 873. Neither the general taxes nor the drainage assessments have been paid on a very considerable portion of the lands of said district. Such lands have become delinquent for the general taxes and the drain-

age assessments, and the delinquent certificates for such assessments and taxes are held by Wood County. No purchasers can be found for such certificates, because the lands are not considered worth the amount of the assessments with which they are burdened, and the method provided by sec. 89.37 (4) (d) (set forth in the margin) [1] seems to be the only method by which Wood County may realize its general taxes, or the drainage district any portion of its assessments. The trial court found this to be the situation, and also found that in order to secure purchasers at a sale it would be necessary to sell said lands under conditions that would give the purchaser a title free and clear of any lien resulting from drainage assessments. In order to accomplish this, the circuit court first ordered an additional assessment for construction up to the full assessment for benefits upon each and every tract and parcel of land in the district, and then ordered a sale of the land under said sec. 89.37 (4) (d).

It is contended that such additional assessment can only be made to pay principal and interest already due, and that

---

[1] In case that any of the lands so bid in by the county shall have not been redeemed or certificates assigned within the period prescribed by the statutes relating to general taxation, the circuit court may, upon the application of the county, the commissioners, or of any creditor or bondholder of the drainage district within which said lands are located, direct the treasurer of such county to offer said lands for sale at public auction, in such manner as the court shall direct, and notice of such sale shall be served upon the parties interested by publication once each week for three successive weeks in a newspaper published in the county, by posting in five public places in the drainage district and by mailing a copy of the notice to each interested party whose postoffice address is known or can by reasonable inquiry be ascertained and to the secretary and clerk of each corporation affected. Report shall be made and deed issued in the manner provided by sections 278.16 and 278.17, and from the moneys received from the sale of said lands the county treasurer shall first deduct any unpaid general taxes due the county and the costs of such proceedings, and shall pay the balance of such moneys in the manner and to such creditors or bondholders as the court shall direct. When lands shall have been finally sold under order of the court as provided herein, they shall be released from all lien of assessments levied prior to the time of such sale.

it cannot include principal or interest which has not yet become due. This may be the tenor of sec. 89.44, which provides for additional assessments in any year when necessary to pay principal or interest, but in order to accomplish the purpose contemplated by sec. 89.37 (4) (d) it is plain that such an assessment is necessary. That provision of the statute is in the nature of a winding-up proceeding, and was enacted for the express purpose of enabling bondholders to realize upon their security where the owners of lands had abandoned them for the amount of taxes and assessments imposed upon them. Where it is apparent that no one will pay anything for the lands so long as they are subject to further drainage assessments, it is plain that in order to secure bidders the sale at which they purchase must wipe out everything in the nature of a drainage assessment. This exact procedure was followed and sanctioned in the Dancy Drainage District (*In re Dancy Drainage District,* 199 Wis. 85, 227 N. W. 873), and its propriety need not be further discussed.

It is contended by appellants that the county did not have such an interest in these delinquent tax and drainage certificates as to enable it to make the petition which instituted these proceedings. That the county had an interest in the collection of the general taxes unpaid upon these lands would seem apparent; but further discussion of its interest is beside the mark, because the statute under consideration expressly provides that the circuit court may act under its provisions "upon the application of the county, the commissioners, or of any creditor or bondholder of the drainage district." An analysis of the county's interest in the matter or a consideration of the results of the proceeding so far as the interests of others may be affected, cannot affect the plain authority thus conferred upon the county by the statute.

Appellants make the further point that in determining the amount of the last assessment, interest on the assessments

for construction should have been computed and regarded as a part of the cost of construction in order to ascertain the amount of the benefits already exhausted, and that the difference between the benefits already exhausted so ascertained and the amount of the benefits assessed marks the limit of the amount that may be further assessed against the land for construction. The lower court at first took this view, but upon a re-examination of the question concluded that neither interest accrued, or to accrue, upon the assessments for construction constituted a part of the cost of construction, and arrived at the amount of benefits already exhausted by excluding this item. We have no doubt of the correctness of the latter conclusion. Numerous considerations lead to this result, but we believe the following constitutes a sufficient demonstration.

Sec. 89.02, Stats., provides that " 'Cost of construction' shall include reasonable attorney fees for petitioners and commissioners, damages to lands and corporations both within and without the district, and all expenses, of whatever nature, incurred in the organization of and in the construction and completion of the work of a drainage district." This sweeping and inclusive provision does not include interest as a part of the cost of construction. It is to be noted that if the cost of construction be paid in cash, the item of interest does not enter into the equation. Although it is provided by sec. 89.35 that the court may order the assessment for construction to be paid in not more than fifteen annual instalments, it also provides that "unless otherwise ordered, such assessments shall be payable at once," and that at any time before the commissioners have entered into a contract to borrow money upon notes or bonds based upon such assessment any owner of land may pay into court the amount of the assessment against his land or any tract thereof together with the interest thereon at the rate of six per cent. per annum from the date of entry of the order of confirmation to the date of such payment. From this it ap-

pears that any landowner assessed for the cost of construction may pay the amount thereof in cash. When the amount is so paid he has no interest charge to meet. The owner who prefers to pay in instalments is charged with interest, not however as a part of the cost of construction but as compensation for the forbearance and for the use of the money which he is enabled to enjoy in the meantime. It is said in the brief of the appellants that courts generally hold that interest on deferred instalments constitutes a part of the cost of construction. However that may be, it is plain that under our statutory scheme the cost of construction is regarded as a cash transaction, and that interest paid on deferred instalments is the cost of forbearance and not the cost of construction.

*By the Court.*—The order appealed from is affirmed.

