IN RE FARM DRAINAGE DISTRICT No. 1, WAUPACA COUNTY : HABERSAAT and others, Appellants, vs. FARM DRAINAGE BOARD OF WAUPACA COUNTY and others, Respondents.

*September 13—October 10, 1939.*

For the appellants there was a brief by *Browne & Browne* of Waupaca, attorneys, and *Fisher, Cashin & Reinholdt* of Stevens Point of counsel, and oral argument by *William E. Fisher* and *Edward E. Browne*.

A separate brief was filed by *Edward E. Browne in pro. per.*

*Edward J. Hart* of Waupaca, for the respondent Drainage Board of Waupaca County.

*Edward J. Walden* of Appleton, for the respondents "Unpaid Bondholders."

FOWLER, J.   The Wisconsin statutes since 1919 have provided for organization by the county courts of farm drainages and the assessment of the lands therein for the cost of construction of the works up to the amount of the benefits received.   From the petition for a writ of *certiorari* and the return the following facts appear: A farm drainage was organized by the county court of Waupaca county in June, 1920.   In October, 1920, each parcel of land in the drainage was assessed for the cost of construction at an amount less than the amount of the benefits assessed against it.   The landowners were required to pay the full amount of their assessments forthwith, or in ten annual instalments.   Bonds were issued and sold to the amount of the entire cost of construction.   Relator E. E. Browne and some others forthwith paid the full amount of the assessments against their land. The other complaining landowners have paid the annual instalments and interest thereon as the same fell due.   Bonds were issued by the drainage to get funds to pay construction costs, and as they fell due were paid out of the payments of the annual instalments as long as the funds received from that source were sufficient for the purpose.   All bonds have

been paid in full except thirteen of $500 each, falling due by its terms May 15th of the years 1923, 1928, 1929, 1930, and 1931. On January 16, 1932, there was paid on each of the unpaid bonds $250 out of the funds from the source next-above stated. There remains unpaid on each $500 bond $250 principal and interest on $500 from the date of the bond to said January 16, 1932, and interest on $250 since that date. The $250 payment was made pursuant to order of the county court upon recommendation of the drainage board.

The owners of the defaulted bonds in July, 1936, petitioned the county court to require the drainage board to levy an assessment against the lands in the drainage sufficient to pay the unpaid principal and interest on said bonds and the costs of the proceedings. Pursuant to this petition, orders were made by the court directing such assessment against all the lands in the district and confirming an assessment made pursuant to the directing order. Certain landowners who had fully paid their original assessments brought *certiorari* in the circuit court to vacate the assessments against their lands. Upon motion of the bondholders the writ was quashed. From the order quashing the writ said landowners appeal.

(1) It is claimed by respondents that the assessment of which the relators complain, if erroneous at all, was merely erroneous as matter of law, as distinguished from being beyond the jurisdiction of the drainage board to make and of the court to approve, and that as only jurisdictional errors may be reviewed by *certiorari* the quashing of the writ was proper and should be affirmed upon that ground. They contend that the county court was acting in a purely judicial capacity in approving the assessment, as distinguished from performing an administrative or ministerial act, and that as the farm drainage statutes give no appeal from "orders" made in drainage proceedings, except those "organizing or refusing to organize a 'drainage' or confirming assessments

of *benefits* or awards of damages," sec. 88.25, Stats., the order of confirmation was final, and the relators are without remedy to review it.

Even if the position of the respondents that the county court was acting in a purely judicial capacity is correct, the main contention of the relators, that the court acted in excess of its jurisdiction, could be raised by *certiorari*. The county court is an inferior court, and the circuit court is given by the state constitution, sec. 8, art. VII, supervisory control over all inferior courts. This power may be exercised to keep inferior courts within their jurisdiction. *State ex rel. Peart v. Wisconsin Highway Comm.* 183 Wis. 614, 618, 198 N. W. 753. The main contention of the relators is that the only power to make assessments given by the Farm Drainage Act is for "cost of construction," sec. 1368—8 1 (e), Stats. 1919, and for "additional cost of construction and for supplemental costs of construction," sec. 1368—10 5, Stats. 1919. Thus, it is claimed no power is given to impose an assessment to pay the bonds. Want of power is a jurisdictional question, and the relators are thus entitled to have their claim in this respect decided upon the merits. The judgment quashing the writ in its entirety could therefore not properly be granted on the ground that the writ does not lie.

(2) It is claimed by the respondents that the contention of the relators that the county court was without power to make the assessment to pay the bonds is ruled against them by *In re Dancy Drainage District,* 190 Wis. 327, 208 N. W. 479, and it was so held by the county court. In that case the circuit court, in proceedings involving a drainage district created under the general drainage law, was required by this court to assess against all the land in the district an amount sufficient to cover the amount due as principal and interest on defaulted bonds issued to procure a fund to pay costs of construction. There, as here, an assessment to cover the cost of construction had originally been made. It was claimed

there that the court was without power to make an assessment to pay the bonds because when the bonds were issued no provision for paying the principal of the bonds was contained in the general drainage statutes, the only provision for assessment being to pay for costs of construction, sec. 1379—22, Stats. 1911, as here, and for paying defaulted interest, sec. 1379—30 1, and that the assessment to pay the principal of the defaulted bonds was invalid. The statute last quoted provided that "if in any year an additional sum is necessary to pay the interest on lawful indebtedness of said drainage district, further or additional assessments on the lands . . . benefited . . . shall be made . . . under the order of the court or presiding judge." By ch. 633, Laws of 1913, this section was amended to insert the words "principal or" before the word "interest," and expressly to provide that an assessment might be made to cover both principal and interest on defaulted bonds. Thus, the claim of want of authority to make an assessment to pay the defaulted bonds there in suit was precisely the same as the want of authority here claimed. This court held that such assessment should be made because the 1913 amendment to the general drainage statute conferred such power. The opinion says, page 335, that the 1913 amendment "only in terms expresses a remedy not theretofore specifically mentioned. In such case the remedy may be invoked though given subsequent to the execution" of the bond. In a concurring opinion by Mr. Justice OWEN it is stated, page 339, that—

"Any remedy created since the issuance of the bonds which will enable the collection of the same is available to the bondholders."

In the instant case, the statute authorizing the bonds, sec. 1368—12, Stats. 1919, gave no express authority to make an assessment to pay either defaulted interest or principal. But we are of opinion that the provision of sec. 89.72, Stats., renders the rule of the *Dancy Case* applicable here.

That statute gave to the instant bondholders what the 1913 amendment gave to the *Dancy Drainage District* bondholders, another remedy to enable them to recover what was due upon their bonds. Sec. 89.72, Stats., was enacted by ch. 41, Laws of 1925. That section, after declaring by sec. 89.71 that no further drainage districts should be organized under ch. 89, Stats., provided as follows:

"The provisions of ch. 89 of the statutes shall remain in full force and effect as to all districts organized and in process of organization prior to the taking effect of this section, under any law of this state, and as to farm drainages organized, or to be organized, under ch. 88 of the statutes."

This section in continuing in force all provisions of ch. 89 as to farm drainages in effect incorporates in ch. 88 the provision for making assessments to pay principal and interest on bonds. It is, in effect, an amendment of ch. 88 authorizing such an assessment. It thus gives to owners of farm drainage bonds an additional remedy to enforce collection of their bonds, just as the 1913 amendment to sec. 1379—30 1, Stats. 1911, gave to the bondholders in the *Dancy Drainage District* an additional remedy. The remedy given by sec. 89.72, Stats., to holders of bonds of farm drainages, although given subsequent to the issue of their bonds, inured to the benefit of the instant bondholders just as the remedy given to holders of the *Dancy Drainage District* bonds subsequent to their issue inured to them.

(3) The relators also contend that the bondholders may not bring an original proceeding in the county court to compel assessments against lands to pay bonds issued for costs of construction when the landowners have paid assessments to pay such cost. They contend that the bondholders cannot collect on their bonds "without going into a common-law court and establishing liability" of the drainage. This contention also goes to the jurisdiction of the county court.

To this it is sufficient to say that sec. 89.72, Stats., has continued in force ch. 89 as to farm drainages. Precisely such a proceeding as we have here was involved in the *Dancy Drainage District Case, supra,* under the statutes now included in ch. 89. Sec. 89.03, Stats., provides that all proceedings under the drainage district law are equitable in their nature. That the circuit court upon the petition of bondholders properly took the proceedings involved in the *Dancy Drainage District Case* is not open to question. Like proceeding was taken by the circuit court in *In re Wood County Drainage District,* 201 Wis. 368, 230 N. W. 57. All provisions of ch. 89 being continued in force as to farm drainages, the instant proceeding in the county court was proper. While the county court is not a common-law court, but a court of limited jurisdiction, it has jurisdiction to entertain such proceedings as by the statutes are given to it to entertain, and the instant proceeding is so given.

(4) The statute authorizing the instant bonds, sec. 1368—12, Stats. 1919, declared bonds issued to pay construction costs "a lien on the assessments for cost of construction." It is claimed by appellant Browne that by reason of this provision and his payment of the original assessment for cost of construction his land is not subject to any lien at all, and not assessable for any further payment by him. It is true of course that the original assessment against his land was no longer a lien on his land after its payment. The lien created by that assessment was satisfied. But it does not follow that the land was not subject to any subsequent assessment. Clearly, his land was subject to a subsequent assessment if the original assessment was insufficient to pay the cost of construction, or "supplemental cost of construction." Sec. 1368—10 5, Stats. 1919. No more was his land free from an assessment to pay the bonds issued to meet cost of original construction, if, as we have held, assessment for such purpose was proper under sec. 89.72, Stats.

It is contended that the case of *In re Wood County Drainage District, supra,* operates to relieve Mr. Browne from assessment to meet the bonds. It might so seem at first blush. It is there said in the opinion, page 372, that interest is not included "as a part of the cost of construction. It is to be noted that if the cost of construction be paid in cash, the item of interest does not enter into the equation." It is there further said, page 373, that when a landowner assessed for cost of construction has paid the amount of the assessment in cash "he has no interest charge to meet." · Yet the landowners in that case who paid their assessments in cash, if any there were, were assessed, in the final assessment there directly involved, for both principal and interest on the bonds of the district issued to raise money to pay the cost of construction, just as Mr. Browne is assessed in the instant assessment. The assessment involved in the *Wood County Case* was up to the full amount of the benefits assessed, in order to wipe out all indebtedness of the district, including both principal and interest on bonds. The effect of Mr. Browne's payment was to relieve his lands from the effect of the original assessment, not to relieve them from the liens of any later ones that might subsequently be made. The *Dancy Drainage District Case, supra,* presented "the sole question whether or not the petitioners [bondholders] are [were] entitled to an additional assessment to pay the principal and interest due on their bonds" (p. 331). It does not expressly appear in the opinion of the court, or in the statement of facts preceding it, that any landowner in the *Dancy Drainage District* paid his assessment in cash before the bonds were issued. But that such was considered the fact is apparent from the statement in the dissenting opinion, page 341, that—

"If, as now proposed, a new assessment can be levied upon those landowners who paid and discharged their liability,

their land will not be relieved from the lien of this assessment, but in order to relieve themselves they will have to pay a new and additional assessment."

The statements of the court in the *Wood County Case* above referred to were made, not upon the point of district liability for interest on bonds, but in connection with the reduction of the assessed benefits to limit liability for the assessment involved.

It should be observed that Mr. Browne is in no different position from the other landowners in this case, except four. Over forty tracts are included in the drainage. All landowners except four, whose lands were subjected to annual assessments, paid the full amount of their several assessments with interest. One landowner, a railroad company, never paid its assessment. Three others claimed failure to include ditches to properly drain their lands, and themselves dug additional ditches to effect their drainage. They objected to paying assessments for this reason. The matters were compromised by allowing them the cost of the ditches they dug and deducting the amount from the cost of the assessments. The same arguments against further assessments lay in behalf of the landowners who paid the annual assessments that are urged by Mr. Browne. There is an injustice in requiring the landowners who paid to pay the deficiency arising through the failure of the railroad company to pay its assessments. This situation inhered in the *Dancy Drainage District* to a much greater degree than here. Of it this court there says, page 336, of its opinion:

"It is also urged that it is inequitable to levy further assessments because those who pay will have to pay more than their share—some not having paid at all. This is true, but it is a species of inequity that exists whenever there is a joint liability and one that exists as to the levy of general taxes. Whenever there is a failure to collect all general taxes there is a loss that must be borne by those who pay, but that does not release them from the burden of meeting the obligations jointly due."

(5) The relators contend not only that their claim that the act of the county court in ordering the assessment involved was in excess of the court's jurisdiction was properly raised by *certiorari,* but that the amount collectible on the bonds was also properly so raised. They interpose in defense to the assessment that the six-year statute of limitations, sec. 330.19, barred recovery on the bonds, and that the assessment for their payment is void. They also claim that the bonds do not bear interest after their due date, and that the interest coupons attached to the bonds do not bear interest, and that they are entitled to relief because of the excessive inclusion of interest in the assessment even if the statute of limitations does not bar recovery. The respondents contend that however it may be as to the claim of action in excess of jurisdiction being raised by *certiorari,* the determination of the amount collectible on the bonds cannot properly be so raised, as error as to the amount, if such there was, was not a jurisdictional error but merely an error of law.

The contention of the respondents in this respect is based upon the proposition that the county court in determining the amount due on the bonds and fixing the amount to be raised by the assessment to pay them was acting in a purely judicial capacity and its determination, if erroneous, cannot be reviewed by *certiorari.*

It was held in *Stone v. Little Yellow Drainage District,* 118 Wis. 388, 95 N. W. 405, that the circuit court in drainage proceedings under the general drainage statute acts in a judicial capacity, and that its orders are not subject to collateral attack. If so, the county court in farm drainage proceedings so acts and its orders cannot be so attacked, as the proceedings under the two sets of statutes are substantially alike, and the county court in general acts in the one proceeding and has the same powers as the circuit court in the other. We are of opinion that the county court in the instant case in determining the amount due on the bonds was acting in a purely judicial capacity. "When the writ [of *certiorari*]

runs to an inferior court the only question for determination is whether the court had jurisdiction or has exceeded its jurisdiction." *State ex rel. Peart v. Wisconsin Highway Comm., supra; Varrell v. Church,* 36 Wis. 318; *State ex rel. Milwaukee Medical College v. Chittenden,* 127 Wis. 468, 107 N. W. 500. The orders of courts acting in a judicial capacity, where jurisdiction is present, are not subject to review except on appeal or by writ of error if that writ lies. Appeal is a statutory remedy, and if no statute provides for an appeal, then there is none. See 1 Callaghan's Wis. Dig. p. 112, § 1, and cases cited. The farm drainage statute contains no express provision for appeal, except from orders organizing a drainage, or an assessment of benefits or an assessment of damages. Sec. 1368—25 1, Stats. 1919. However, sec. 89.72, Stats., by continuing in force ch. 89 as to farm drainages, applies to give appeals in such proceedings in all cases in which appeals lay from orders of the circuit court under the general drainage district statute. Sec. 89.15, Stats., gives an appeal within thirty days from all judgments and final orders of the circuit court in drainage proceedings. An order confirming an assessment against lands is a final order, and final orders are appealable. Sec. 274.09 (2), Stats. By virtue of the population of Waupaca county, appeals lie from the county court to the supreme court. Sec. 324.01 (2), Stats. We are of opinion that by force of the statutes above cited the landowners had a right to appeal to this court from the order of the county court confirming the instant assessment against their lands. Having failed to exercise that right within the statutory period of thirty days they have lost it and cannot by *certiorari* review errors of law inherent in the determination of the amount due upon the bonds, if any there were. While the constitution, sec. 21, art. I, provides that the writ of error shall never be prohibited, we need not consider whether the writ lay to review the instant order because if it did not the relators'

only remedy was by appeal, and if it did, the writ was not resorted to and right to it was lost by not applying for it timely. Sec. 274.01, Stats.

We are of opinion, and so hold, that a determination whether the amount due on the bonds in suit was in excess of the amount legally due, whether based upon refusal to apply the statute of limitations or otherwise, would clearly be a question of law and as such not reviewable by *certiorari*.

(6) Some other matters are mentioned in the briefs of the relators, as that bonds were unlawfully issued to cover the cash payments of assessments for cost of construction by Mr. Browne and other landowners, and that the drainage board unlawfully applied proceeds of the annual assessments to other purposes than payment of the bonds. But if so these matters are not involved in the instant case. The ultimate question with which we are here concerned is the assessment for the payment of the bonds, and we believe we have sufficiently covered the issues respecting that matter.

*By the Court.*—The judgment of the circuit court quashing the writ of *certiorari* is affirmed.