## MUNICIPAL INVESTORS ASSOCIATION *v.* BIRMINGHAM ET AL.

No. 755.   Argued April 1, 1942.—Decided April 27, 1942.

*Mr. Claude H. Stevens* for appellant.

*Messrs. Herbert J. Rushton,* Attorney General of Michigan, *Ferris D. Stone, Frederic S. Glover, Jr.,* and *Harry Allen* were on the brief for appellees.

MR. JUSTICE REED delivered the opinion of the Court.

This appeal challenges a decision of the Supreme Court of Michigan, which upheld the constitutionality of Michigan statutes [1] extinguishing unmatured special assessments, tax liens or other encumbrances on land sold for tax delinquency, and which therefore refused a writ of mandamus to compel the City of Birmingham to levy an additional special assessment on land so sold, to pay defaulted paving bonds issued in 1928 by its predecessor, the Village of Birmingham. 298 Mich. 314, 299 N. W. 90. The appellant, Municipal Investors Association, as holder of these bonds, claims to have a contract right under the law of Michigan in 1928 to require such an additional assessment, and asserts that the subsequent Michigan statutes construed to prevent the levy impair the obligation of its contract contrary to Article I, § 10 of the United States Constitution.

Determination of this Court's jurisdiction of the appeal was postponed to the hearing of the case upon the merits. We think that the constitutionality of the two 1937 statutes upheld by the Michigan Supreme Court was sufficiently and seasonably drawn in question in appellant's reply, and that the jurisdictional requirements of § 237

[1] Acts Nos. 114, 155, Mich. Pub. Acts of 1937.

of the Judicial Code (28 U. S. C. § 344) are satisfied. Appellant challenged the Acts as violative of the Contract Clause. But we find it unnecessary to consider the effect or validity of these statutes, for we think the appellant has failed to establish any contract right to an additional assessment after a sale to enforce an assessment lien under the preëxisting Michigan law, in force when the bonds were issued.

The decision refusing mandamus for an additional assessment was entered on the pleadings. These disclose that the Village of Birmingham, in order to pay the cost of paving certain streets, took proceedings in 1928 to assess 23.4% of the cost to the Village at large, and 76.6% to the property abutting the improvement, Special Assessment District No. 146. The property assessment was payable in five equal annual installments commencing with 1928. Of one hundred and ten parcels in District No. 146, about one hundred never paid their shares of the assessment, were offered for sale for these and other unpaid taxes at the annual tax sale of 1938, and were bid in by the State of Michigan. They were not redeemed, and were later sold by the State. About ten parcels in the District paid their shares of the paving assessment and have never been sold for taxes.

In anticipation of the collection of this special assessment the Village had issued in 1928 seventeen annually maturing serial 5¼% bonds. Of these, No. 1 to No. 7 appear to have been paid, No. 8 to No. 11 were refunded, and No. 12 to No. 17, which are held by appellant, have all been in default both as to interest and principal at least since October 1, 1933. A negligible amount is on hand in the special assessment fund, and not over 20% of the amount still owing will be realized from the District's share in the proceeds of the tax sales. In order to replenish the fund, the appellant seeks to compel the de-

fendants by the laws in force when the bonds were issued to levy upon all the land in the District, including the lots previously sold for taxes and the original assessment, an additional assessment equal to the unpaid principal and interest.

The general Act under which the Village was incorporated listed among the permissible charter powers a provision "for assessing and reassessing the cost, or any portion thereof, of any public improvement to a special district," Act No. 278, Public Acts of 1909, § 24 (e); Mich. Comp. Laws (1929) § 1786 (e).[2] Pursuant to this authorization, § 15 of Chapter XXI of the village charter provided: "Should any special assessment prove insufficient to pay for the improvement or work for which it was levied, and the expenses incident thereto, the Commission may make an additional pro rata assessment to supply the deficiency; and in case a larger amount shall have been collected than was necessary, the excess shall be refunded ratably to those by whom it was paid."[3] Section 22 of Chapter XX of the charter stated that special assessment

---

[2] The same act stated that "No village shall have power: . . . To issue any bonds without creating a sinking fund for the payment of the same, except special assessment bonds which are a charge upon a special district created for the payment thereof, and serial bonds payable annually." Act No. 278, Public Acts of 1909, § 26 (k); Mich. Comp. Laws (1929) § 1788 (k).

[3] Section 18 of Chapter X of the charter of the City of Birmingham, adopted in 1933, makes provision for an additional assessment to meet insufficiencies in special assessments "for any cause, mistake or inadvertence." Section 12 of Chapter XVIII makes these provisions effective for the village debts where legally applicable. Obviously, unless the village charter provision in effect when the bonds were issued authorized additional assessments to meet deficiencies, the city clause could not add that burden to the lots. It would be applicable only if it were a means of enforcing an existing right. Cf. *In re Farm Drainage Dist. No. 1, Waupaca County*, 232 Wis. 455, 460, 461, 287 N. W. 806, 809

bonds should "be payable out of the special assessment district fund when the assessment is collected." In the bonds themselves the Village promised to pay the principal and interest, "said principal and interest however, being payable from the Special Assessment fund created for the purpose . . . The full faith and credit of the Village of Birmingham are hereby pledged for the punctual payment of the principal and interest of this bond from the special assessment fund created for the purpose, when the same shall have been collected."

The Michigan Supreme Court assumed, without deciding, that these various provisions did include in the bondholders' contract a right to additional assessments after a tax sale for the payment of deficiencies attributable to non-payment of valid prior assessments. 298 Mich. 314, 319, 299 N. W. 90, 92. As a contract must exist before it can be impaired, and as our conclusion against existence of the contract right settles this case, we feel it proper to consider only whether there was a contract between the bondholders and the Village for an additional assessment on the district property to meet deficiencies, instead of undertaking the resolution of the constitutional issue presented by the challenged statutes of Michigan. While this approach forces us to decide the meaning of Michigan legislation without the assistance of the courts of that State, it is necessary to do so because of the obligation of this Court to determine for itself the basic assumptions upon which interpretations of the Federal Constitution rest.[4]

The complete charter of the Village is not before us. From the authorized power granted by the Public Act of 1909 under which it was organized, however, from the

---

[4] *Appleby* v. *New York,* 271 U. S. 364, 379; *Kersh Lake Dist.* v. *Johnson,* 309 U. S. 485, 489–490; *Hale* v. *State Board,* 302 U. S. 95, 101.

language in § 15 of Chapter XXI of the charter providing for "an additional pro rata assessment" and from the terms of the bond, limiting its payment to "the special assessment fund created for the purpose, when the same shall have been collected," we are satisfied there was no contract to reassess lots once sold for the original assessment. If the stated powers of the Village to levy an assessment on improvement district property required that the lots assessed, after sale for default in their installments, should be subject to an additional assessment to cover such deficiencies, the burden might depress their value to a point where little if anything could be realized for the bondholders, and successful sale for non-payment would be frustrated. This would clearly be true where, as here, a very large proportion of the assessments were defaulted. A prospective investor in the bonds must look ultimately to the sale of each lot for the payment of the amount assessed against that particular parcel.[5]

Section 15 of the village charter authorizes an additional assessment when the original assessment proves insufficient to pay for the improvement. Assessment bonds may

---

[5] A general lien upon lands in a district has been held to be created by suitable statutory provisions. *American Securities Co.* v. *Forward*, 220 Cal. 566, 32 P. 2d 343.

In drainage and irrigation districts the cases differ as to whether bonds with the district as obligor are the general obligations of the district or payable only from the special assessments against each parcel.

Separate obligations: *Interstate Trust Co.* v. *Montezuma District*, 66 Colo. 219, 181 P. 123; *State* v. *Board of Commissioners*, 89 Mont. 37, 95, 296 P. 1, 18; *Nelson* v. *Board of Comm'rs*, 62 Utah 218, 218 P. 952.

General obligations: *American Falls Reservoir Dist.* v. *Thrall*, 39 Idaho 105, 124, 228 P. 236, 241; *Noble* v. *Yancey*, 116 Ore. 356, 241 P. 335; *State ex rel. Clancy* v. *Columbia Irrigation Dist.*, 121 Wash. 79, 87, 208 P. 27, 30.

be based on undertakings whereby benefited lands may be liable even after they were sold to pay the assessment liens upon them to recover for defaults in sales of other assessed properties. See *Kadow v. Paul,* 274 U. S. 175. But in the absence of controlling Michigan law, § 15 repels such a construction. The language falls far short of subjecting lots which have been sold to pay tax or assessment liens to an additional assessment for the deficit. Such a construction would defeat the remedy of tax sales as a means of realizing the assessment lien.[6]

The opinion of the Supreme Court of Michigan does not deal specifically with the status of the lots which have not been sold to satisfy the assessments. In the absence of an assignment of error upon that ground, we express no opinion thereon.

*Affirmed.*

---

[6] Courts of other states have considered similar questions. *Henry Wilcox & Son v. Riverview Dist.,* 93 Colo. 115, 25 P. 2d 172; *Reynard v. Caldwell,* 55 Idaho 342, 42 P. 2d 292; *Hartz v. Truckenmiller,* 228 Iowa 819, 293 N. W. 568; *State ex rel. Johnson v. Dayton,* 200 Wash. 91, 93 P. 2d 909. But cf. *State ex rel. Frazer v. Holt County Court,* 135 Mo. 533, 37 S. W. 521; *In re Farm Drainage Dist. No. 1, Waupaca County,* 232 Wis. 455, 287 N. W. 806 (district was promisor).