STATE EX REL. DI SALVO, Appellant, v. COUNTY COURT OF WASHINGTON COUNTY, Respondent.

*No. 75–456. Argued June 2, 1977.—Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 459.)

---

28

For the appellant there was a brief and oral argument by *Joseph P. Balistrieri* of Milwaukee.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, *Frederick J. Erhardt,* assistant attorney general, and *James A. Bottoni, Jr.,* corporation counsel, Washington county, and oral argument by *J. Douglas Haag,* assistant attorney general.

HEFFERNAN, J.   This is an appeal from an order quashing an alternative writ of prohibition which the circuit court had previously issued temporarily restraining the county court of Washington county, Judge Robert J. Stoltz, from proceeding with the criminal contempt trial of Steve Di Salvo.  Di Salvo had earlier been charged with criminal contempt pursuant to sec. 256.03 (3), Stats., for allegedly failing to respond to Judge

Stoltz' subpoena ordering him to appear before a Washington county John Doe proceeding conducted by Judge Stoltz.

Judge Meister quashed the alternative writ on the ground that Di Salvo, the petitioner for the writ, had failed to show that there was no adequate remedy other than the issuance of the writ of prohibition and failed to show that any extraordinary hardship would result in the event the writ were not granted.

While the trial judge acknowledged that Di Salvo alleged in conclusory terms that there was no effective remedy and that extraordinary hardship would result if the writ were not granted, he pointed out that no facts were alleged in the petition to support those conclusions. We agree with the circuit judge's analysis of the petition, and we affirm.

Petitioner's only allegations of extraordinary hardship if the writ were not granted appear in paragraphs 9 and 11 of the petition addressed to the circuit court. Petitioner alleged:

"9. That your Petitioner seeks a Writ of Prohibition from this Court and prays that this Honorable Court invoke its constitutional supervisory powers over the County Court in order to avoid the grave and extra-ordinary hardship to your Petitioner and a complete denial of rights of your Petitioner, in that the actions of the County Court exceed its jurisdiction . . . .

"11. That your Petitioner is further grossly prejudiced by the fact that after making a finding of criminal contempt as herein alleged, the County Court insists upon trying this matter itself and refuses to transfer the case to another uninvolved impartial tribunal for the trial of this cause and that as such besides being contrary to the laws of the United States and the Due Process Clause of the United States Constitution, your Petitioner is deprived of a witness in the person of the Honorable Robert J. Stoltz, who has exculpatory testimony to give on his behalf; and further that the proceeding to trial for a criminal contempt before the very Court who issued

the charge is clearly violative of the constitutional rights of your Petitioner and such action deprives him of a neutral and impartial trier of fact."

The petitioner's only allegation of the inadequacy of the remedy of appeal is also set forth in a portion of paragraph 9:

". . . that any appeal in this matter will come too late to correct the great and prejudicial error of the County Court and that there is no adequate remedy at law or otherwise for your Petitioner to gain relief except by the issuance of this Writ of Prohibition; that the issuance of this Writ of Prohibition will expedite the litigation of this matter . . . ."

These allegations purport to be in compliance with the conditions that this court has stated are necessary for the issuance of the writ. We recently stated those conditions in *State ex rel. Prentice v. County Court,* 70 Wis.2d 230, 234 N.W.2d 283 (1975). In that case we said:

"[B]efore prohibition will lie, certain well-settled prerequisites must be satisfied. First of all, it must appear that an appeal is not an adequate remedy. Secondly, it must be shown that extraordinary hardship will result unless a writ of prohibition is available." (at 234)

It is not, however, sufficient to merely assert these prerequisites. It is necessary, in addition, to allege sufficient facts reasonably to demonstrate that ordinary remedies are inadequate and that extraordinary hardship will in fact result if prohibition is not granted. We stated in *State ex rel. Jefferson v. Roraff,* 44 Wis.2d 250, 170 N.W.2d 691 (1969):

"[I]rrespective of the meritoriousness of a claimed error . . . this court will not reach the merits by the exercise of supervisory jurisdiction unless extraordinary circumstances calling for the use of the writ have been sufficiently demonstrated." (at 259)

That holding was summarized in *Mohrhusen v. McCann,* 62 Wis.2d 509, 512, 215 N.W.2d 560 (1974), when we said:

"In the *Roraff Case* the court concluded that mere inclusion in the petition of a general conclusory statement that there is no adequate remedy and that grave hardship will result if the writ does not issue will not suffice. Facts must be alleged in support of such conclusions."

The petitioner's assertion that appeal is inadequate is supported by no facts whatsoever. The petitioner does not argue that appeal is an inappropriate remedy or would fail to afford him complete relief were he to prevail on an appeal from a contempt finding. In his brief before this court, he asserts, for the first time, that an appeal is inadequate because he would be obliged first to appeal to the circuit court and then to the Supreme Court. This contention is incorrect as a matter of law. We pointed out in *State ex rel. Jenkins v. Fayne,* 24 Wis. 2d 476, 129 N.W.2d 147 (1964), that contempt orders of a county court are appealable directly to the Supreme Court.

At oral argument before this court, Di Salvo's counsel also argued that appeal would be inadequate because his client might be incarcerated for the contempt during a possible lengthy period while the appeal was pending in this court. This allegation overlooks other remedies which may be available if a sentence of confinement were to be imposed as punishment for contempt.

He might well be afforded immediate relief by *habeas corpus. State ex rel. Furlong v. Waukesha County Court,* 47 Wis.2d 515, 177 N.W.2d 333 (1970) ; *State ex rel. Cullen v. Ceci,* 45 Wis.2d 432, 173 N.W.2d 175 (1970). In addition, if any substantial doubt should exist after conviction in respect to the legal sufficiency of the conviction, stay of execution pending appeal to this court may be granted either by the trial court or by this court.

Di Salvo has alleged no facts sufficient to show that an appeal, if necessary, would not provide an adequate remedy.

The allegation of extraordinary harm if the trial proceeds is equally without a factual foundation. While he alleges that "grave and extra-ordinary hardship" will result because he asserts the county court will act in excess of its jurisdiction, the jurisdictional error, if it occurs, is fully correctable by the remedy of appeal.

The circuit judge stated:

"I find that the allegations in the petition for alternative writ of prohibition do not meet the necessary requirements because no facts are alleged in support of the conclusions contained therein."

Our review of the record fully substantiates the conclusion of the circuit judge; and we, too, find the petition insufficient.

It should be made clear, however, that we do not explore the merits of Di Salvo's claim in this opinion. Basically, that claim is that there can be no contempt for disobedience of an order of a judge, but only for failure to comply with an order of a court. While this legal issue is a substantial one, we conclude the merits of the claim are not appropriate for consideration on this present appeal, because they can be re-asserted, if necessary, upon an appeal following trial in the county court.

It should be mentioned in passing that, on this appeal, Di Salvo has also contended that he cannot be afforded a fair determination of the contempt charges pending against him, because he asserts that Judge Stoltz has stated that he had already decided that Di Salvo was guilty of criminal contempt. We do not read the record as containing any such prejudgment of the merits of the case. The record shows that, on April 14, 1975, Judge Stoltz made the statement:

"*If* the allegations in the papers supporting the motion are proven or admitted, then, yes. I have decided that Mr. Di Salvo is guilty of criminal contempt." (Emphasis supplied.)

In the first place, we think it clear from the record that Judge Stoltz did not prejudge the case, nor did he announce that he had already found the petitioner guilty of contempt. A reasonable reading of the record can lead only to the conclusion that Judge Stoltz merely stated that, if all the allegations in the petition and in the supporting affidavits were proved at trial, they would support a finding of criminal contempt. We have no reason to believe from the record that Judge Stoltz would evince any prejudice in the trial of this case.

Moreover, as the assistant attorney general on this appeal conceded, it is arguable that, under the statutes now in effect, trial would be had before a different judge. The new criminal contempt statute enacted by ch. 401 of the Laws of 1975 and effective on June 15, 1976, sec. 256.04 (2) (a), Stats., contains the following provision:

"(2) Nonsummary Procedure. (a) In all contempt situations other than those described in sub. (1), there shall be a nonsummary procedure conducted by a different judge, unless the defendant consents to the same judge."

While we do not attempt to hold in this opinion that the revised statutes are necessarily applicable to the contempt law as it existed at the time of Di Salvo's alleged contempt, there appears to be a substantial likelihood that because sec. 256.04 (2) (a), Stats., is essentially procedural in nature, it would apply to any action tried after its effective date, although the offense in substance was allegedly committed under a prior statute. *See, Mosing v. Hagen,* 33 Wis.2d 636, 641, 148 N.W.2d 93

(1967) ; *State ex rel. Davis & Starr Lumber Co. v. Pors*, 107 Wis. 420, 427, 83 N.W. 706 (1900).

The respondent, Judge Stoltz, has filed a motion to review the order of the circuit court. He contends, aside from the insufficiency of Di Salvo's petition, that the circuit court had no superintending jurisdiction in respect to actions and proceedings in the county court. The basic argument of the respondent is that, although the county court has in constitutional terms been considered an inferior court, legislative enactments have subsequently conferred substantially concurrent jurisdiction on circuit and county courts in respect to criminal matters. It is argued, therefore, that, where the county court has assumed subject matter jurisdiction, the circuit court as a court of concurrent jurisdiction may not interfere.

It is, of course, true that in most cases, and as a practical matter, the county court is not an inferior court. Its judgments and orders, until reversed, carry the same authority and dignity as those of the circuit courts. It is, however, under the nomenclature of the Wisconsin Constitution, an inferior court and is subject to the supervisory jurisdiction of the circuit court.

While both the county court and the circuit court have original jurisdiction in respect to contempt actions, the circuit court, when it exercises its constitutional powers for the issuance of a writ of prohibition, is exercising not its concurrent original jurisdiction in respect to the contempt action, but its supervisory jurisdiction conferred by the organic law of this state.

The county court possesses no supervisory jurisdiction. It has no jurisdiction in that respect that is concurrent with the circuit court. See, Cole, *Extraordinary Writs and*

*Their Use by the Wisconsin Supreme Court to Supervise Inferior Courts*, 3 Student Bar Journal 155, Spring 1969.

Art. VII, sec. 2, of the Constitution of the State of Wisconsin, in effect at the time pertinent to this appeal, provided:

"Judicial power, where vested. Section 2. The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, and courts of probate. The legislature may also vest such jurisdiction as shall be deemed necessary in municipal courts, and may authorize the establishment of inferior courts in the several counties, cities, villages or towns, with limited civil and criminal jurisdiction. Provided, that the jurisdiction which may be vested in municipal courts shall not exceed in their respective municipalities that of circuit courts in their respective circuits as prescribed in this constitution; and that the legislature shall provide as well for the election of judges of the municipal courts as of the judges of inferior courts, by the qualified electors of the respective jurisdictions. The term of office of the judges of the said municipal and inferior courts shall not be longer than that of the judges of the circuit courts."

Art. VII, sec. 3, confers appellate, superintending, and original jurisdiction upon the Supreme Court:

"Supreme court, jurisdiction. Section 3. The supreme court, except in cases otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state; but in no case removed to the supreme court shall a trial by jury be allowed. The supreme court shall have a general superintending control over all inferior courts; it shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other original and remedial writs, and to hear and determine the same."

Corollary to the jurisdiction conferred upon the Supreme Court, Art. VII, sec. 8, grants jurisdiction to the circuit courts. It provides:

"Circuit Court, jurisdiction. Section 8. The circuit courts shall have original jurisdiction in all matters civil and criminal within this state, not excepted in this constitution, and not hereafter prohibited by law; and appellate jurisdiction from all inferior courts and tribunals, and a *supervisory control* over the same. They shall also have the power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and all other writs necessary to carry into effect their orders, judgments and decrees, and give them a general control over inferior courts and jurisdictions." (Emphasis supplied.)

A legislative acknowledgment of the jurisdiction of the circuit courts appears in sec. 252.03, Stats. That section provides in part:

"252.03 Jurisdiction of circuit courts. The circuit courts have the general jurisdiction prescribed for them by the constitution and have power to issue all writs, process and commissions provided therein or by the statutes, or which may be necessary to the due execution of the powers vested in them. . . ."

Sec. 253.11, Stats., in respect to civil jurisdiction, provides for substantially concurrent jurisdiction of the county court with the circuit court, ". . . except actions for the extraordinary remedies of certiorari, prohibition, and quo warranto . . . ."

It is thus apparent that the jurisdiction sought to be exercised by the circuit court is not a jurisdiction conferred either by the Constitution or the statutes upon the county court. While the jurisdiction over contempts, either civil or criminal, is concurrent, the superintending jurisdiction is not. Clearly, the circuit court under the Constitution, and as its constitutional powers are restated by the statutes, may issue appropriate writs for the exercise of its superintendency over the county courts. Wisconsin case law has consistently so held.

This court in *In re Farm Drainage District No. 1, Waupaca County,* 232 Wis. 455, 459, 287 N.W. 806 (1939), stated:

"The county court is an inferior court, and the circuit court is given by the state constitution, sec. 8, art. VII, supervisory control over all inferior courts."

In *Wisconsin Area Health & Welfare Fund v. Hon. Walter H. Cate,* 71 Wis.2d 375, 378, 238 N.W.2d 107 (1976), we said:

"Unquestionably, the circuit court has supervisory control over the county court, and possesses jurisdiction to issue writs of mandamus to the county court returnable to it."

Apparently *State ex rel. Dore v. Stoltz,* 42 Wis.2d 534, 167 N.W.2d 214 (1969), has been construed by some as evidence that the authority for supervising control of a circuit court over a county court remains an open question. It is clear that in the opinion in *Dore,* no reservations in respect to the superintending control of the circuit court over the county court were expressed. Because the case was decided on other grounds, it was unnecessary to consider the question. It is apparent, however, that the question was settled long before *State ex rel. Dore v. Stoltz. See, Farm Drainage District, supra; State ex rel. Sachtjen v. Festge,* 25 Wis.2d 128, 130 N.W. 2d 457 (1964); *State ex rel. Kiekhaefer v. Anderson,* 4 Wis.2d 485, 90 N.W.2d 790 (1958); *State ex rel. Beck v. Duffy,* 38 Wis.2d 159, 156 N.W.2d 368 (1968); *Drugsvold v. Small Claims Court,* 13 Wis.2d 228, 108 N.W.2d 648 (1961).

The circuit court may exercise its superintending jurisdiction over the county court in an appropriate case, even though the subject matter jurisdiction of the underlying case may be concurrent in the circuit and the county courts.

We are satisfied that in the instant situation the circuit court had superintending jurisdiction to issue the alternative writ, and had it found a sufficient factual underpinning in support of the general allegations of Di Salvo, it would have had the authority to issue the writ of prohibition restraining the county court from further proceedings on the alleged contempt. The circuit court, therefore, appropriately took jurisdiction of Di Salvo's petition for the writ and, under the facts, correctly concluded that an insufficient showing had been made.

*By the Court.*—Order affirmed.