BAKER *v.* STATE LAND OFFICE BOARD.

1. STATUTES—TITLE OF ACT—GENERAL PROPERTY TAX LAW.

The general property tax law with title providing, among other things, ''for the sale and conveyance of lands delinquent for taxes'' is not unconstitutional for failure to provide in the title for the cancellation of past as well as future taxes and special assessments, or that municipalities which have borrowed in anticipation of the collection of taxes or issued special assessment bonds shall have such taxes and assessments cancelled, since such details need not be included within the title (Const. 1908, art. 5, § 21; 1 Comp. Laws 1929, § 3389 *et seq.*, as amended by Act No. 114, Pub. Acts 1937).

2. SAME—TITLE OF ACT—TEST OF SUFFICIENCY.

It is unnecessary that the title of an act include all of the details, incidents, or means of carrying out the object of the legislation, nor an index of the body of the act, but it is enough if the title fairly indicates to the inquiring mind the general scope, intent, and purpose of the law.

3. SAME—TITLE OF ACT—PURPOSE OF ACT.

The title to an enactment is required to be expressive of the purpose and scope of the enactment and if the enactment comes fairly within and is reasonably a component part of the purpose expressed in the title it is not an interloper but a part thereof and so proper as to be expected therein.

4. SAME—TITLE OF ACT—STATE LAND OFFICE BOARD ACT.

The State land office board act, as amended, does not violate the constitutional provisions relative to scope of the title of an act (Const. 1908, art. 5, § 21; Act No. 155, Pub. Acts 1937, as amended).

5. CONSTITUTIONAL LAW—EX POST FACTO LAW—VESTING OF TITLE IN TAX DELINQUENT LAND IN STATE.

The general property tax law, as amended, by which title to all lands within the borders of the State that had been sold for delinquent taxes and bid in by the State became vested in the State upon expiration of the 18-month period of redemption

is not unconstitutional because, previously, lands had to be delinquent in taxes for five years before the State could acquire title, as the right of redemption is not a constitutional right but exists only as permitted by statute, and laws of retroactive character, affecting tax liens which attached prior to such an enactment by shortening the time previously fixed for sale or redemption, affect only a remedy for the delinquency of the taxpayer and do not impair contract obligations or vested rights (1 Comp. Laws 1929, § 3389 *et seq.*, as amended by Act No. 325, Pub. Acts 1937).

6. Taxation—Redemption from Sale—Statutes.
   A taxpayer's right of redemption from sale of land for delinquent taxes is not a constitutional right but exists only as permitted by statute.

7. Constitutional Law—Taxation—Retroactive Statutes.
   A statute of retroactive character, affecting tax liens which attached prior to its enactment, is not unconstitutional, since it affects only a remedy for the delinquency of the taxpayer and does not impair contract obligations or vested rights.

8. Municipal Corporations—Bonds—Tax Liens.
   Purchasers of municipal bonds are assumed to have purchased with knowledge that the lien upon the property securing taxes and assessments for the payment thereof might be displaced (Act No. 155, Pub. Acts 1937, as amended).

9. Constitutional Law—Sales of Land Under State Land Office Board Act—Vested Rights.
   Sales under the State land office board act of land to which the State had acquired title through sale for delinquent taxes are not invalid on ground that vested rights of municipalities to liens for taxes and assessments already assessed and levied are destroyed, especially in view of the distribution to the various taxing units of the proceeds from sales (Act No. 155, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

10. Same—Taxation—Vested Rights—Redemption—Withholding from Sale by Municipalities.
    Amendment of State land office board act providing for sales at public auction, which granted municipalities the right to withhold lands from sale for one year and prevent the cancellation of delinquent taxes and special assessments on lands to which the State had acquired title, advanced the date of such sales, and shortened the redemption and repurchase period upon the part of the taxpayer during period of redemption from sale to State for delinquent taxes, was not invalid as

the decree fixing the redemption period, entered pursuant to statutes then in force, did not vest rights in the tax delinquent debtor (1 Comp. Laws 1929, § 3389 *et seq.,* as amended; Act No. 155, Pub. Acts 1937, as amended by Acts Nos. 244, 329, Pub. Acts 1939).

11. TAXATION—DELINQUENT TAXPAYER—VESTED RIGHTS—INTEREST— REDEMPTION.

One who owes delinquent taxes has no vested right to have the interest thereon remain unchanged nor to have the time of sale or period of redemption continue the same as it existed during the period of delinquency.

12. SAME—STATUTES—TAX SALES—DELINQUENT TAXPAYER—VESTED RIGHTS.

Vested rights do not arise in favor of delinquent taxpayer out of redemption provisions of a decree entered pursuant to a remedial statute governing tax sales.

13. CONSTITUTIONAL LAW—CLASSIFICATION.

The fundamental rule of classification for the purpose of legislation is that it shall not be arbitrary; and it is not reviewable unless palpably arbitrary and unreasonable.

14. SAME—STATE-OWNED LANDS—POWER OF LEGISLATURE.

The legislature is empowered to provide for the sale of land to which the State has title in any way not prohibited by the Constitution.

15. SAME—STATE LAND OFFICE BOARD ACT—CLASSIFICATION OF LAND FOR ADMINISTRATIVE PURPOSES.

The State land office board act which, for purposes of administration, assigned 36 rather more populous, industrial and agricultural southern counties to the State land office board and the remainder, consisting largely of cut-over and denuded lands, to the conservation department, *held,* not unconstitutional as discriminatory and as constituting an unlawful classification in violation of the State and Federal Constitutions because the line of demarcation may not be one of absolute exactitude, in the absence of a showing by plaintiff of any unlawful discrimination (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 1; Act No. 155, Pub. Acts 1937, as amended).

16. SAME—CLASSIFICATION—BURDEN OF SHOWING ARBITRARY ACTION.

If any state of facts reasonably can be conceived that would sustain a statutory classification, its existence must be assumed and one who assails such a classification has the burden of showing by a resort to common knowledge or other matters

which may be judicially noticed, or to other legitimate proof that the action is arbitrary.

17. TAXATION—PURPOSE OF STATE LAND OFFICE BOARD ACT—COLLECTION OF PART OF DELINQUENT TAX—RESTORATION TO TAX ROLLS.

The primary and inducing purpose of the State land office board act providing for public auction of lands to which the State had acquired title upon sale for delinquent taxes is to secure a portion of the unpaid taxes, rather than nothing, and to restore the lands to a taxpaying basis, instead of supinely allowing them to accumulate tax delinquencies with no hope of ever recovering them (Act No. 155, Pub. Acts 1937, as amended).

18. MANDAMUS—COSTS—PUBLIC QUESTION.

No costs are allowed in mandamus proceeding to compel the State land office board to refund amount paid for deed, a public question being involved (Act No. 155, Pub. Acts 1937, as amended).

Petition by Harry H. Baker for a writ of mandamus to compel the State Land Office Board and others to accept a reconveyance of certain land and to refund money. Submitted July 2, 1940. (Calendar No. 41,111.) Writ denied September 6, 1940.

*A. J. Michelson,* for petitioner.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd, Peter Bradt, Andrew De Maggio, John Panchuk* and *Kenneth G. Prettie,* Assistants Attorney General, for defendants.

*Miller, Canfield, Paddock & Stone, Yerkes, Goddard & McClintock, Berry & Stevens, Charles L. Wilson,* Oakland County Prosecuting Attorney, *Harry J. Merritt,* Oakland County Corporation Counsel, *William Ewart,* Pontiac City Attorney, *William C. Hudson,* Royal Oak City Attorney, *Orph C. Holmes,* Ferndale City Attorney, *Charles H. Losee,* Clawson City Attorney, *Forbes Haskell,* Birmingham City

Attorney, *Robert C. Baldwin,* Royal Oak Township Attorney, *Burney E. Brower,* Jackson City Attorney, *A. Edward Brown,* St. Joseph City Attorney, *William J. Balgooyen,* Muskegon Heights City Attorney, *Lynn B. Mason,* Kalamazoo City Attorney, and *Rollin Sargent,* Saginaw City Attorney, *amici curiae.*

McALLISTER, J.   Plaintiff filed a petition for a writ of mandamus in this court to compel repayment to him of moneys paid to the State land office board in the purchase of certain real estate. He contends that the State did not have a valid title to the lands sold, and that the statute under which the sale was made is unconstitutional.

Prior to the 1938 sale of tax-delinquent lands in Genesee county and throughout the statutory period of redemption, plaintiff held title in fee to certain subdivision lots in Burton township included in the list of properties affected by the petition of the auditor general for the sale of tax-delinquent lands in compliance with requirements of section 61 of the general property tax law of this State (Act No. 206, § 61, Pub. Acts 1893 [1 Comp. Laws 1929, § 3452 (Stat. Ann. § 7.105)]), as then amended by Act No. 91, Pub. Acts 1937.   Plaintiff filed no objections to the petition of the auditor general and, at the annual sale held in May, 1938, in the absence of private bids, according to the terms of the decree and the law in such case provided (see 1 Comp. Laws 1929, §§ 3451–3467 [Comp. Laws Supp. 1940, §§ 3451–3467, Stat. Ann. §§ 7.104–7.120]), title to the lots here in question became vested in the State, subject to plaintiff's right to redeem within 18 months.   This privilege of redemption was not exercised, and on November 3, 1939, the right ceased to exist.

Act No. 155, Pub. Acts 1937, effective July 3, 1937, created the State land office board and entrusted to

its jurisdiction the disposition and sale of those lands in a specified southern portion of counties in lower Michigan, absolute title to which had become vested in the State after the effective date of the act. This law was later amended by Acts Nos. 29, 244 and 329, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 3723-1–3723-14, Stat. Ann. 1940 Cum. Supp. §§ 7.951–7.964).

Under section 7 of the State land office board act, as amended, the sale of lands within the board's jurisdiction was to begin February 13, 1940, and to include only such lands the absolute title to which had vested in the State. Plaintiff's lots were affected by this sale, and he availed himself of the privilege accorded former owners by section 7 of the act and repurchased his property for the sum of $50, that being the highest bid.

On March 11, 1940, the land office board executed and delivered to plaintiff, who accepted it, a quitclaim deed conveying to him title in fee to the property formerly owned by him. On March 12, 1940, plaintiff tendered to the State land office board the quitclaim deed so received and accepted by him, offered to reconvey the property to the State of Michigan, and demanded return of the sum of $50 paid as consideration. The State land office board refused to comply with these demands, and plaintiff filed his petition for a writ of mandamus to compel the board to refund the purchase money and accept reconveyance of the lands in controversy. An order to show cause issued, to which defendants filed return.

For a proper understanding of the case, a preliminary statement with regard to the legislative background and history of the statutes in question may illuminate the issues involved.

Between the years 1920 and 1930 speculative activities in real estate in the State, unrestrained by

normal caution and on a scale unparalleled, had resulted in platting of subdivisions with building lots sold at highly inflated prices. The same exaggeration seeped into farm lands and business properties in cities. During this period municipalities and their officials encouraged the speculative movement by approval, in undeveloped areas, of widespread improvements, including sewer extensions, sidewalks, and pavements. The entire movement was pervaded by an enthusiasm uncolored by moderation. But all of these plans and hopes collapsed under the pitiless and inexorable advance of economic depression, of which this court has on several occasions taken judicial notice. *Schnitz* v. *Grand River Avenue Development Co.,* 271 Mich. 253; *Pesciarelli* v. *Trestain,* 288 Mich. 89. Vestiges of these shattered dreams of wealth survive in spectral outlines of cities now crumbling to ruin in remote country fields, and the omniscient eye of retrospection finds it is easy to survey the past and call it unwise.

The result of this activity was that taxes on excessively high assessments became delinquent and accumulated in amount until they greatly exceeded the assessed valuation. For approximately six years subsequent to 1932, no tax sales were held; moratorium statutes were passed by the legislature, embodying waiver of interest and penalty charges, and providing for payment of taxes in instalments covering a 10-year period; but such efforts to effect payment were in vain, and the unpaid taxes accumulated until in some counties they exceeded five times the amount of the assessed valuation of the property. Planning commissions, which occupied themselves with a possible solution of the problem, were appointed by the governor, and concluded that the various plans to remedy the situation had failed to stop the abandonment of tax-delinquent land; and

legislative committees made exhaustive studies in an effort to devise means of overcoming the rapidly growing peril which was assuming catastrophic form. The result was the enactment of Act No. 155, Pub. Acts 1937, and the amendment of the general property tax law by Acts Nos. 114 and 325, Pub. Acts 1937.

Under the provisions of Act No. 155, Pub. Acts 1937, as amended, there was created the State land office board; and, in addition, there were also delegated to the State department of conservation certain powers respecting lands the title to which should become vested in the State. Act No. 155, § 3, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 3723-3, Stat. Ann. 1940 Cum. Supp. § 7.953), provides, in part:

"All land the title to which shall be vested in the State of Michigan by virtue of any tax sale after the effective date of this act (July 3, 1937), lying in those counties north of and including the counties of Oceana, Newaygo, Mecosta, Isabella, Midland, and Arenac, whether said land is occupied or unoccupied, shall be under the control and jurisdiction of the department of conservation. All other land the title to which shall be vested in the State of Michigan by virtue of any tax sale after the effective date of this act, whether occupied or unoccupied, shall be under the control and jurisdiction of the State land office board."

Section 6 of this act, as amended by Act No. 329, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3723-6, Stat. Ann. 1940 Cum. Supp. § 7.956), defines the authority, power, and duties of the department of conservation in respect to State-owned land confided to its jurisdiction, and in that connection refers to certain then existing laws as guides to the exercise of such discretion and power: *viz.*, Act No. 206, §§ 127 and 131, Pub. Acts 1893, as amended, and Act

No. 21,.Pub. Acts 1873 (2 Comp. Laws 1929, § 5868 *et seq.*), as amended by Act No. 152, Pub. Acts 1933 (Comp. Laws Supp. 1940, §§ 5869, 5870, Stat. Ann. § 13.511 *et seq.*).

Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3723-7, Stat. Ann. 1940 Cum. Supp. § 7.957), prescribes the duties and defines the power of the newly-created State land office board over State-owned lands confided to its jurisdiction and control, and sets up in detail the administrative machinery for the annual so-called "scavenger sale" of such lands, beginning on the second Tuesday of February of each year and continuing from day to day until all the parcels have been sold. The act expires, however, in 1944 (Act No. 155, § 14, Pub. Acts 1937, as amended by Act No. 29, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 3723-14, Stat. Ann. 1940 Cum. Supp. § 7.964]).

The pertinent provisions of the general property tax law, as amended, concern the sale and redemption period of tax-delinquent property.

It is claimed by petitioner that the title of the general property tax law, as amended, is not sufficiently broad to cover the provisions of the act, as amended; that Act No. 155, Pub. Acts 1937, known as the State land office board act, as amended, is an *ex post facto* law; that it impairs the obligations of contract; that the title to such amended act is not sufficiently broad to cover the purposes therein set forth; that the State land office board act, in arbitrarily dividing the State into two distinct parts for the purpose of application of the law, resulted in discrimination and unlawful classification, in violation of the fourteenth amendment to the Constitution of the United States and of the Constitution of Michigan, 1908, art. 2, § 1.

The title of the general property tax law, as amended, reads:

"An act to provide for the assessment of property and the levy and collection of taxes thereon, and for the collection of taxes heretofore and hereafter levied; making such taxes a lien on the lands taxed, establishing and continuing such lien, providing for the sale and conveyance of lands delinquent for taxes, and for the inspection and disposition of lands bid off to the State and not redeemed or purchased; and to repeal Act No. 200 of the Public Acts of 1891, and all other acts and parts of acts in anywise contravening any of the provisions of this act."

It is claimed that the title of the act violates Const. 1908, art. 5, § 21, which provides, in part:

"No law shall embrace more than one object, which shall be expressed in its title."

It is claimed that there is nothing in the title of the general property tax law, as amended by Act No. 114, Pub. Acts 1937, to indicate that it covers the cancellation of past as well as future taxes and special assessments, or that municipalities which have borrowed in anticipation of the collection of taxes or issued special assessment bonds shall have such taxes and assessments cancelled. To this contention it may be answered that it is not required to include such details in the title of the act. The statute, in its title, provides for the sale and conveyance of tax-delinquent land. If it were necessary to include in the title the nature of the title secured by a purchaser on such a sale, as well as the specific tax incumbrances from which the property was freed in such proceedings, it would be likewise obligatory to include in the title of the act an index of practically all of its provisions. This is unnecessary. In *Mackin* v. *Detroit-Timkin Axle Co.*, 187 Mich. 8, 20, it was said:

"We are unable to agree with plaintiff's contention that the title of this act violates the requirements of article 5, § 21, of our Constitution, in that it embraces more than one subject, and includes provisions not expressed in the title. It has been said this section is not to be given a narrow and strained construction (*National Loan & Investment Co.* v. *City of Detroit,* 136 Mich. 451), and it is familiar doctrine that this constitutional provision does not require in the title details, incidents, or means of carrying out the object of the legislation, nor an index of the body of the act, but it is enough if it fairly indicates to the inquiring mind the general scope, intent, and purpose of the law. An examination of the title before us and comparison with titles to like statutes in other States discloses that it has been prepared with careful consideration and is unusually comprehensive and broad in its scope. The purpose of the act is broadly declared, and the object sought to be accomplished clearly stated in general terms, from which it must be understood as meaning that the act will contain many germane details and provisions necessary and suitable for the object not set out at length in the title."

In *Loomis* v. *Rogers,* 197 Mich. 265, 271, where a similar objection was made to the title of an act, the court said:

"An abridgment of all those sections is not essential to a sufficient title. While it contains various related provisions not directly indicated or enumerated in the title, under the construction of this constitutional requirement, as many times reviewed by this court, if the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met.

"A title is but a descriptive caption, directing attention to the subject matter which follows."

In the case of *In re Lewis' Estate,* 287 Mich. 179, 183, it was said by Mr. Justice WIEST:

"The title to an enactment is required to be expressive of the purpose and scope of the enactment. If the enactment comes fairly within and is reasonably a component part of the purpose expressed in the title it is not an interloper but a part thereof and so proper as to be expected therein."

Similar claims of invalidity fall under the same rule, and can not be sustained.

A like contention is made with regard to Act No. 155, Pub. Acts 1937, as amended. What has been said above with regard to the general property tax law and Act No. 114, Pub. Acts 1937, applies with equal force to this claim.

Nor is Act No. 206, Pub. Acts 1893, as amended, unconstitutional as "an *ex post facto* law and impairs the obligations of contract," as claimed by petitioner. Under the express provisions of the general property tax law of 1893, as amended by Act No. 325, Pub. Acts 1937, title to all lands within the borders of the State that had been sold and bid in by the State became vested in the State upon expiration of the 18-month period of redemption. It is contended that prior to the amending act the period of redemption was five years; that such an amendment, cutting off title of the owners in a lesser period of time, cannot apply retrospectively to taxes levied before the amendment. Counsel apparently refers to 1 Comp. Laws 1929, § 3520, as amended by Act No. 250, Pub. Acts 1933 (Stat. Ann. § 7.181), which requires that lands be delinquent in taxes for a period of five years before the State can acquire title. The right of redemption, however, is not a

constitutional right, but exists only as permitted by statute. *Keely* v. *Sanders,* 99 U. S. 441; *Dumphey* v. *Hilton,* 121 Mich. 315. Laws of retroactive character, affecting tax liens which attached prior to such an enactment, are not unconstitutional, *City of Detroit* v. *Safety Investment Corp.,* 288 Mich. 511; and statutes affecting such liens, shortening the time previously fixed for sale or redemption, affect only a remedy for the delinquency of the taxpayer and do not impair contract obligations or vested rights. See *Muirhead* v. *Sands,* 111 Mich. 487; *Board of Supervisors* v. *Hubinger,* 137 Mich. 72 (4 Ann. Cas. 792); *Harsha* v. *City of Detroit,* 261 Mich. 586 (90 A. L. R. 853).

It is claimed that the statute destroys vested rights of municipalities to tax liens and assessments already assessed and levied, and destroys property and contract rights of individuals who have purchased bonds under the assumption of their payment through collection of the very taxes and assessments which the act cancels. In addition to our determination as above expressed, it can be said that such purchasers can be assumed to have purchased with knowledge that the lien upon the property securing such taxes and assessments might be displaced.

In *Hoffman* v. *Otto,* 277 Mich. 437, where it was determined that a title under a tax deed from the auditor general did not free the land from liens of a municipality for taxes, it was held, nevertheless, that the State could, by appropriate legislation, provide for such a sale, free from liens for taxes and assessments of a municipality, but that such legislation would have to be plainly expressed. It is unnecessary to discuss the differences between sales of tax liens by governmental authorities and sales of land the title to which is vested absolutely in the State (see *Krench* v. *State of Michigan,* 277 Mich. 168, and *Rathbun* v. *State of Michigan,* 284 Mich. 521); but it

is sufficient to remark that Act No. 155, § 10, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3723-10, Stat. Ann. 1940 Cum. Supp. § 7.960), provides that, from the proceeds of the sales of land thereunder, there shall be paid to the several tax assessing units said moneys "in proportion to the delinquent taxes and special assessments of such units cancelled," and that "Such cancelled taxes and special assessments shall be deemed to include all taxes and assessments levied or becoming liens against said lands prior to the vesting of title in the State of Michigan." Sales of land under the provisions of the above statute cannot be said, under any theory, to result in the destruction of vested rights.

Under the provisions of Act No. 206, §§ 67, 67a, Pub. Acts 1893, as last amended by Act No. 114, Pub. Acts 1937, Act No. 155, Pub. Acts 1937, and Act No. 206, § 74, Pub. Acts 1893, as last amended by Act No. 325, Pub. Acts 1937, a decree was entered in this case by the circuit court for the county of Genesee, providing an 18-month period to redeem from the tax sale. Under the statutes then in effect, the owner would have had the right to repurchase the right so sold, subject to the right of such municipalities, not returning delinquent taxes to the county treasurer, to withhold lands from sale and prevent cancellation of the delinquent taxes and special assessments. Subsequent to the decree, Acts Nos. 244 and 329, Pub. Acts 1939, amending Act No. 155, Pub. Acts 1937, advanced the date of such sales, shortened the redemption and repurchase periods, and granted to all municipalities in 36 southern counties of the State the right, on application, to withhold any and all lands within their jurisdiction from sale for a period of one year, during which time the lien of such municipalities for taxes and assessments continued.

Such municipalities were enabled, under the provisions of the act, to purchase such lands for certain purposes within that period, and in the event of their failure to do so, it was provided that such lands would be offered for sale at the next yearly sale by the State land office board. It is asserted that the legislature could not subsequently grant to municipalities which did not have the rights to withhold lands from tax sales, at the time of such decree, such withholding rights; that the shortening of the period for redemption was unconstitutional.

The decree in question was entered pursuant to the tax statutes in effect at the time, and for the purpose of carrying out the provisions of such law. Such decree cannot be said to vest rights in the tax delinquent debtor. The claimed rights arose only out of the provisions of the statute governing sales for tax delinquency; and such rights are subject to abridgment by the legislature, for the reason that they are remedial in their nature. One who owes delinquent taxes has no vested right to have the interest thereon remain unchanged, *Webster* v. *Auditor General,* 121 Mich. 668, nor to have the time of sale or period of redemption continue the same as it existed during the period of delinquency. *Muirhead* v. *Sands, supra.* Nor do vested rights arise out of redemption provisions of a decree entered pursuant to a remedial statute governing tax sales.

Furthermore, it is contended that the statute providing for sale of tax-delinquent lands at public auction by the State land office board is unconstitutional, for the reason that it discriminates between the owners of land in northern counties and the owners of land in southern counties; that conditions are attached to the rights of owners of such northern lands, to which the owners of the lands in the southern counties are not subject. However, it must be

remembered that all of the lands offered for sale are owned by the State of Michigan. Former owners are granted certain rights as bidders and purchasers, but the sale is of land, title to which is vested in the State; and inasmuch as the State is the absolute owner of the lands, the legislature is empowered to provide for the sale thereof in any way not prohibited by the Constitution.

It is objected that the geographical division of the State set forth in the statute, for the purpose of administering all lands, title to which became vested in the State, assigning to the department of conservation lands in counties lying north of a certain line, and to the State land office board lands in counties lying south thereof, constitutes discrimination and unlawful classification in violation of the fourteenth amendment to the United States Constitution, and article 2, § 1, of the Constitution of the State of Michigan, 1908.

According to the provisions of the statute, all owners of lands in the southern division are entitled to bid at the sales which are required to be held by the State land office board; but owners of land in the northern counties have the opportunity to purchase only if, within 30 days of the vesting of title to such lands in the State, they make application therefor.

An examination of the division of the State made by the legislature for the purposes of the act would seem to evidence the exercise of a careful discretion. Within the northern portion of counties are Oceana and Newaygo counties, but at its eastern terminal there is excluded the more populous county of Bay, which is included in the agricultural and industrial section of the southern counties; and a sharp deviation of the line is made to include Arenac county in the northern group. The fundamental rule of classification for the purpose of legislation is that

it shall not be arbitrary; and it is not reviewable unless palpably arbitrary and unreasonable. *Haynes* v. *Lapeer Circuit Judge,* 201 Mich. 138 (L. R. A. 1918 D, 233); *Straus* v. *Elless Co.,* 245 Mich. 558. Information available to the legislature would appear reasonably to show that a large portion of the lands in the north which have reverted to the State in the past have been cut-over and denuded lands, and soil surveys indicate that much of such land is submarginal and unsuited to agriculture; that it would appear to be to the best interests of the public to reforest or otherwise rehabilitate such areas, so that they might become an asset of value to the State. It is difficult to draw an exact line between the different portions of the State upon such a basis. But absolute exactitude in such matters is not necessary to sustain reasonable classification. It would appear that the policy of the legislature was to sustain such a program of rehabilitation of the northern lands by dividing the administration of all reverted lands between the State land office board, for the southern lands, and the conservation department, for those of the north. With regard to the southern counties which are primarily agricultural or industrial in character, it apparently was the view of the legislature that such lands could probably remain in private ownership, with the expectation that they would continue to be taxpaying properties; and that, therefore, provision should be made for offering at public auction all properties that had reverted in this part of the State. And it is a reasonable conclusion that the legislature, in the exercise of its discretion, had determined from past experience with reverted lands in the designated northern part of the State that they were of such a character that private interests, generally, could not manage and maintain them with the proba-

bility of regularly paying taxes; that, therefore, the conservation department should be given discretionary authority to determine which of these lands should be sold and at what times. Former owners of land in the northern division, however, were granted the right to cause such lands to be sold by making application therefor within 30 days after the vesting of title in the State. Assuming a valid geographical classification, such provisions are reasonably proper to carry out the purpose of the legislature in preventing all of the northern land from being sold by the State, and at the same time giving owners of such lands an opportunity to avail themselves of the right to repurchase; and we see in such provisions with regard to the sale of land and the payment therefor no unlawful discrimination between citizens as would contravene constitutional limitations.

With regard to the contentions raised that the classification of counties for the purpose of administering the act is unconstitutional, under well-established rules it cannot be held that the act is arbitrary, capricious, or unreasonable. In *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389, 418 (34 Sup. Ct. 612, L. R. A. 1915 C, 1189), it is said:

"A legislative classification may rest on narrow distinctions. Legislation is addressed to evils as they may appear, and even degrees of evil may determine its exercise."

If any state of facts reasonably can be conceived that would sustain statutory classification, its existence must be assumed. *Naudzius* v. *Lahr,* 253 Mich. 216 (74 A. L. R. 1189, 30 N. C. C. A. 179).

In *Borden's Farm Products Co., Inc.,* v. *Baldwin,* 293 U. S. 194, 209 (55 Sup. Ct. 187), it is said:

"When the classification made by the legislature is called in question, if any state of facts reasonably

can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61 (31 Sup. Ct. 337, Ann. Cas. 1912 C, 160) ; *Ohio, ex rel. Clarke,* v. *Deckebach,* 274 U. S. 392, 397 (47 Sup. Ct. 630) ; *Lawrence* v. *State Tax Commission of Mississippi,* 286 U. S. 276, 283 (52 Sup. Ct. 556, 87 A. L. R. 374).''

''It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. * * * It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety.'' *Rast* v. *Van Deman & Lewis Co.,* 240 U. S. 342, 357 (36 Sup. Ct. 370, L. R. A. 1917 A, 421, Ann. Cas. 1917 B, 455).

We are of the opinion that a state of facts can reasonably be conceived to sustain the legislative policy and enactment. Petitioner has failed to overcome the presumption of constitutionality with regard to his contention that the statute is invalid by reason of unlawful discrimination.

That the statute in question is a mere subterfuge to cancel taxes and assessments, and to enable owners to escape their obligations to the governmental taxing authorities, is next advanced as an argument by petitioner. It is claimed that the act arbitrarily discriminates between rights and privileges of former owners, rights of municipalities, and strangers to the title, who bid at such sales. If the former owner matches the bid of another, he is awarded the right of purchase. The State receives as much from one as it would from the other. It might well be

the opinion of the legislative body that the former owner, once he was relieved of the weight of accumulated obligation, had a greater interest in maintaining the land as a taxpaying property than an outsider. Furthermore, there would seem to be no illegal consideration in granting municipalities a year's delay in order that they might acquire properties incumbered by taxes owed to them. The superiority of their interest and the public interest warrants such consideration; and to all of such contentions, it might well be answered that the primary and inducing purpose of the legislation was to secure a portion of the unpaid taxes, rather than nothing, and to restore lands to a taxpaying basis, instead of supinely allowing them to accumulate tax delinquencies with no hope of ever recovering them. In accordance with the foregoing, it is our determination that there has been no showing of unconstitutional discrimination or classification in the provisions of Act No. 155, Pub. Acts 1937; that Act No. 206, Pub. Acts 1893, as amended by Act No. 114, Pub. Acts 1937, does not contravene either the State or Federal Constitution as an *ex post facto* law, or impair the obligations of contract; and that the amending statutes, Act No. 244, Pub. Acts 1939, Act No. 325, Pub. Acts 1937, and Act No. 329, Pub. Acts 1939, are not invalid for the reasons as set forth and contended by petitioner. Other matters discussed in the arguments are not necessary to our determination.

The writ of mandamus is denied, no costs being allowed as a public question is involved.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred. The late Justice POTTER took no part in this decision.