KEEFE *v.* OAKLAND COUNTY DRAIN COMMISSIONER.

1. DRAINS—TAXATION—CONSTRUCTION OF STATUTES.

In view of provision of the general drain law empowering collecting officers with the same power and authority in collecting drain taxes as are or may be conferred by law for collecting general taxes, the general drain law must be read and construed together with the general property tax law (1 Comp. Laws 1929, § 3389 *et seq.*, as amended; § 4838 *et seq.*, as amended; § 4927).

2. PROPERTY—INCUMBRANCES—TITLE.

Anything is an incumbrance which constitutes a burden upon the title of property.

3. TAXATION—CANCELLATION' OF INCUMBRANCES—POSSIBILITY OF RE-
ASSESSMENT OF SPECIAL ASSESSMENT.

> The possibility of reassessment of a special assessment consti-
> tutes an incumbrance cancelled by the general tax law upon
> expiration of period of redemption from sale to State of land
> bid in by it at tax sale (1 Comp. Laws 1929, § 3459, as
> amended by Act No. 234, Pub. Acts 1941).

4. SAME—SALE OF LAND FOR UNPAID TAXES—CANCELLATION OF
RIGHT TO REASSESSMENT—IMPAIRMENT OF OBLIGATION OF CON-
TRACT.·

> Upon foreclosure of lien for unpaid taxes, sale of the property,
> cancellation of all other liens and incumbrances including the
> possibility of reassessment, and pro rata distribution of pro-
> ceeds to each tax assessing unit under the State land office
> board act, the maximum security of holders of bonds of the
> drainage district in which the property was located was real-
> ized, and where, under the then-existing circumstances, had
> the lands not been so disposed of, they would have been ren-
> dered valueless for further revenue purposes because of ac-
> cumulated delinquent taxes, the bondholders' contract was not
> impaired (1 Comp. Laws 1929, § 3459, as amended by Act
> No. 234, Pub. Acts 1941; § 4927; § 4940, as amended by Act
> No. 129, Pub. Acts 1939; Act No. 155, §§ 9, 10, Pub. Acts
> 1937, as amended by Act No. 363, Pub. Acts 1941).

5. CONSTITUTIONAL LAW—CONTRACTS—STATUTES.

> Existing laws, including the well-known reservation of the es-
> sential attributes of the sovereign power, are read into con-
> tracts as a postulate of the legal order so as to establish the
> obligations between the parties.

6. SAME—IMPAIRMENT OF CONTRACT OBLIGATIONS—ECONOMIC INTER-
ESTS.

> The economic interests of the State may justify the exercise of
> its continuing and dominant protective power notwithstanding
> interference with existing contracts.

7. SAME—POLICE POWER—CANCELLATION OF TAXES.

> The State land office board act is a valid exercise of the police
> power insofar as it cancels taxes as it does not provide for
> a constitutionally-prohibited surrender of the taxing power
> since the lands sold thereunder become subject to all taxes,
> other than those extinguished by the tax sale, from the time the
> purchaser's bid is accepted by the board, the State's immunity
> from taxation on the lands while held by it not being passed
> on to the purchaser (Const. 1908, art. 10, § 9; Act No. 155,

§ 9, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941).

8. TAXATION—CANCELLATION OF TAXES—SPECIAL ASSESSMENTS.

· The State land office board act does not cancel incumbrances on lands that have not been sold for delinquent taxes nor those portions of special assessments which were spread at large against the several municipalities involved (Act No. 155, § 9, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941).

9. DRAINS—DEFICIENCY ASSESSMENT—CANCELLATION OF TAXES.

Without violating the uniformity clause of the Constitution a deficiency assessment for payment of bonds of a drainage district may be levied against the several municipalities at large and lands within the district to which the State has not acquired absolute title under delinquent tax sales in the same proportion as the municipalities and lands bore the original imposition of cost, that portion which would have been applicable to lands sold for delinquent taxes being deducted from the portion of the deficiency assessment not borne by the municipalities at large (Const. 1908, art. 10, § 3; 1 Comp. Laws 1929, § 3459, as amended by Act No. 234, Pub. Acts 1941; § 4927; § 4940, as amended by Act No. 129, Pub. Acts 1939; Act No. 155, § 9, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941).

10. COSTS—PUBLIC   QUESTION—DEFICIENCY   ASSESSMENT   UPON DRAINAGE DISTRICT.

No costs are allowed in proceedings to obtain a declaratory judgment for purposes of determining spread of deficiency assessment for payment of bonds issued by drainage district, the question being a public one (1 Comp. Laws 1929, § 3459, as amended by Act No. 234, Pub. Acts 1941; § 4927; § 4940, as amended by Act No. 129, Pub. Acts 1939; Act No. 155, § 9, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941).

Appeal from Oakland; Hartrick (George B.), J. Submitted June 10, 1943. (Docket No. 63, Calendar No. 42,415.) Decided October 11, 1943. Application for leave to appeal to Supreme Court of the United States denied by Supreme Court of Michigan December 9, 1944. Probable jurisdiction noted by Supreme Court of the United States February 28, 1944. Affirmed May 22, 1944.

Petition by Kenneth M. Keefe and another against Earl L. Clark, Drain Commissioner of Oakland County, and Oakland County Supervisors for judgment declaring that defendants are required to levy an additional deficiency assessment against all lands in the drain district for payment of outstanding bonds. City of Royal Oak intervened. Judgment for defendants. Plaintiffs appeal. Modified and affirmed.

*Voorhies, Long, Ryan & McNair* and *Dykema, Jones & Wheat,* for plaintiffs.

*Harry J. Merritt,* Corporation Counsel, for defendants.

*William C. Hudson,* for intervener.

BUSHNELL, J. Plaintiffs Keefe and Bradford have appealed from a declaratory judgment which determined that defendants, drain commissioner and board of supervisors of Oakland county, are not obligated, by Act No. 316, chap. 10, § 18, Pub. Acts 1923, as amended by Act No. 331, Pub. Acts 1927 (1 Comp. Laws 1929, § 4940), and Act No. 129, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 4940, Stat. Ann. 1942 Cum. Supp. § 11.104), to levy an additional assessment to cover the deficiency in a drain tax. Plaintiffs are the owners of bonds, which are a part of an original issue in 1927, of $300,000, to finance the construction of the East Clawson storm sewer drain.

This improvement was held to be a legal drain and the assessment, therefore, valid in *Village of Clawson* v. *Van Wagoner,* 268 Mich. 148. The original assessment roll was payable in annual instalments from 1928 to 1937, inclusive, and was levied as follows: 77.5 per cent. against lands in the drainage district; 3.5 per cent. against the

county at large; 2.5 per cent. against township of Troy; 6.5 per cent. against the township of Royal Oak; and 10 per cent. against the village of Clawson. All of the bonds had matured by May 1, 1938, and as of December 31, 1941, $33,440 was due for interest and $223,000 for principal.

The assessment instalments were levied for four years from 1927 to 1931, and then discontinued. In 1937, in contemplation of a refunding arrangement, a supplemental roll was prepared spreading the remaining six instalments of principal over a period extending from 1937 to 1961, and the accumulated interest over a 10-year period. The failure to levy after 1931 was due to a large tax delinquency. Between 1939 and 1940 about 47 per cent. of the lands in the district were bid in by the State at tax sales. How much of these lands have since been returned to private ownership is not disclosed by the record. Before negotiations between the bondholders and the drain commissioner were consummated, the case of *Municipal Investors Association* v. *City of Birmingham,* 298 Mich. 314, was decided on June 30, 1941. Defendants contended that this decision was authority for the proposition that lands in the drainage district which passed through a "scavenger sale" became exempt from any deficiency assessment for unpaid drain taxes. The parties held the refunding plan in abeyance pending decision of the supreme court of the United States in the *Birmingham* appeal, which decision was rendered on April 27, 1942, and reported in *Municipal Investors Association* v. *Birmingham,* 316 U. S. 153 (62 Sup. Ct. 975, 86 L. Ed. 1341). This case was commenced June 25, 1942.

Plaintiffs in the instant case argue that the action of the supreme court of the United States in the *Birmingham Case* was inconclusive of their

rights, and that it became necessary for them to resort to declaratory judgment proceedings in the State courts. The circuit judge held that our decision in the *Birmingham Case* was conclusive of the issues involved, and that lands sold by the State land office board, under the provisions of Act No. 155, Pub. Acts 1937, as amended (Comp. Laws Supp. 1940, 1942, § 3723-1 *et seq.*, Stat. Ann. 1942 Cum. Supp. § 7.951 *et seq.*), were not subject to a deficiency assessment, and since a large portion of the lands in the district were lost to the possibility of reassessment, a deficiency assessment upon the remaining lands which had not been sold for delinquent taxes was "contrary to all the established principles of uniformity and equality in assessment as guaranteed by the Constitution," in that such an assessment "would be a tax having no relationship to benefit."

Appellants now argue that lands which have been sold to the State for delinquent taxes are not exempt from the deficiency assessment after their resale by the State, and that, if the act in question provides for such an exemption, it is in violation of Const. 1908, art. 10, § 9, which reads:

"The power of taxation shall never be surrendered or suspended by any grant or contract to which the State or any municipal corporation shall be a party."

They also contend that, if the act is construed to exempt such lands from deficiency assessments, it does so in violation of the impairment of obligation clauses of the State and Federal Constitutions.* They further contend that, even if such lands are exempt, the remaining lands and the municipalities

* See U. S. Const. art. 1, § 10; Mich. Const. 1908, art. 2, § 9.— Reporter.

against which the original assessment was spread at large are still subject to an additional tax for the purpose of retiring the unpaid drain bonds.

The section of the general drain law, upon which plaintiffs rely, reads in part:

"If there is not sufficient money in the fund in a particular drain at the time of the maturity of the bonds last to mature to pay all outstanding bonds with interest, whether such insufficiency is due to the anticipation of instalments as provided in the preceding section, or to failure to sell any lands for delinquent taxes, or to any other cause, it shall be the duty of the commissioner to at once levy an additional assessment as hereinbefore provided in such an amount as will make up the deficiency." 1 Comp. Laws 1929, § 4940, as amended by Act No. 129, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 4940, Stat. Ann. 1942 Cum. Supp. § 11.104).

The general drain law * must be read and construed together with the general property tax law † of the State for the reason that:

"All drain taxes assessed under the provisions of this act shall be subject to the same interest and charges, and shall be collected in the same manner as State and other general taxes are collected, and collecting officers are hereby vested with the same power and authority in the collection of such taxes as are or may be conferred by law for collecting general taxes." General drain law, chap. 10, § 5 (1 Comp. Laws 1929, § 4927 [Stat. Ann. § 11.91]).

The general property tax law, § 67, 1 Comp. Laws 1929, § 3459, as last amended by Act No. 234, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 3459, Stat. Ann.

---

* See 1 Comp. Laws 1929, § 4838 *et seq.*, as amended (Stat. Ann. § 11.1 *et seq.*).—REPORTER.

† See 1 Comp. Laws 1929, § 3389 *et seq.*, as amended (Stat. Ann. § 7.1 *et seq.*).—REPORTER.

1942 Cum. Supp. § 7.112), provides that the final decree for the sale of lands assessed shall contain, among other provisions, the following:

"It is further ordered, adjudged and decreed that title to each parcel of land ordered in this decree to be offered for sale, and which parcel of land is bid in at such sale to the State, shall become absolute in the State of Michigan on the expiration of the period of redemption from such sale, and all taxes, special assessments, which are charged against or are liens upon such parcel, and other liens and incumbrances, against such parcel, of whatever kind or nature, shall be cancelled as of such date."

The law further provides in the State land office board act (Act No. 155, § 9, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941 [Comp. Laws Supp. 1942, § 3723–9, Stat. Ann. 1942 Cum. Supp. § 7.959]):

"Any quitclaim deed or deeds executed by the board or department shall convey title in fee to land under the provisions of this act, free from any incumbrances, including all taxes and special assessments which were cancelled by the decree pursuant to which the State obtained title."

The latter act was discussed in *Municipal Investors Ass'n* v. *City of Birmingham,* 298 Mich. 314, and those members of the court who concurred in the opinion of Mr. Justice SHARPE held that "anything is an incumbrance which constitutes a burden upon the title," and that "it would naturally follow that the possibility of reassessment would constitute an incumbrance and thus be cancelled."

Appellants argue that the *Birmingham Case* may be distinguished on its facts and is not conclusive of the issues involved in the instant appeal because the legislature, by its amendment to Act No. 206,

§ 67, Pub. Acts 1893 (1 Comp. Laws 1929, § 3459, as amended by Act No. 234, Pub. Acts 1941 [Comp. Laws Supp. 1942, § 3459, Stat. Ann. 1942 Cum. Supp. § 7.112]), effective June 16, 1941, indicated that only those "special assessments which are charged against or are liens upon such parcel," are to be cancelled, and not deficiency assessments which never had been charged against the land, and were not, therefore, liens at the time of sale. We are unable to agree with this argument. The decree of sale provided, as required by statute, that "other liens and incumbrances against such parcel of whatever kind or nature shall be cancelled as of such date." Our *Birmingham* decision is authority for the proposition that the possibility of reassessment would constitute an incumbrance, and is, therefore, cancelled.

In considering appellants' argument with respect to the impairment to the obligations of the contract, it is important that the underlying causes leading to the legislation, which appellants now attack, be fully comprehended and understood.

We need not repeat the history of this legislation, which is detailed in *Baker* v. *State Land Office Board*, 294 Mich. 587, 592 *et seq.*, and which is quoted in our *Birmingham* decision. The impairment argument was presented in both the *Baker* and the *Birmingham Cases* and denied in each decision.

The statute, Act No. 155, § 10, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 3723–10, Stat. Ann. 1942 Cum. Supp. § 7.960), provides that, after the sale of property by the State land office board, each tax-assessing unit shall be paid its pro rata share of the proceeds of the sale. The bondholders' maximum security was thus realized after the tax lien was

foreclosed when the subsequent sale of the property was consummated. Were it not for this act, under the then existing circumstances, the lands would have been rendered valueless for further revenue purposes because of accumulated delinquent taxes, and the bondholders would have realized nothing from their lien. We cannot, therefore, say that the bondholders' contract has been impaired when they received the maximum benefit under the circumstances. As said by the supreme court of the United States in the *Birmingham* appeal:

"If the stated powers of the village to levy an assessment on improvement district property required that the lots assessed, after sale for default in their instalments, should be subject to an additional assessment to cover such deficiencies, the burden might depress their value to a point where little if anything could be realized for the bondholders, and successful sale for nonpayment would be frustrated. This would clearly be true where, as here, a very large proportion of the assessments were defaulted."

To this we add the observation that, if the lands were again subject to a deficiency assessment, after sale to the State and conveyance by it to a third party, the possibility of the restoration of this property to the tax rolls would be considerably lessened because prospective buyers might well hesitate to assume such an obligation.

The rule that existing laws are read into contracts, in order to establish the obligations between the parties, is subject, however, to the well-known reservation of the essential attributes of the sovereign power, and this reservation must also be read into contracts as a postulate of the legal order. *Baker* v. *State Land Office Board*, *supra*. As stated by the Chief Justice in *Home Building & Loan As-*

*sociation* v. *Blaisdell,* 290 U. S. 398, 437 (54 Sup. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481) :

"The economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts."

The act does not, as appellants argue, surrender the taxing power as prohibited by Const. 1908, art. 10, § 9, because the lands in question are subject, from the time that the purchaser's bid is accepted by the State land office board, to all taxes, other than those extinguished by the tax sale. *Wilson* v. *City of Pontiac,* 294 Mich. 79. That portion of the act cancelling taxes is a valid exercise of the police power. The State's immunity from taxation on the lands while held by it is in no way passed on to the subsequent individual purchaser of these lands from the State.

Appellants contend that, if it be held that the deficiency assessment cannot be levied against lands purchased from the State, it can, nevertheless, be levied against those lands which have not been sold for delinquent taxes and against those municipal units against which a proportion of the original assessment had been spread at large.

The trial judge determined that such assessment would violate the uniformity clause of the Constitution.* If the entire amount of the deficiency assessment were spread against such lands and taxing units, the argument would be logical and sound. However, it is only fair and reasonable that such lands and municipalities continue to bear their just proportion of the cost of improvement originally imposed. The act does not cancel incumbrances on lands that have not been sold for delinquent taxes nor those portions of the special assessments which .

* See Const. 1908, art. 10, § 3.—Reporter.

were spread at large against the several municipalities.

A deficiency assessment should be spread and there should be deducted from 77.5 per cent. of the total deficiency that portion which would have been applicable to lands in which the State acquired absolute title under delinquent tax sales, and the remainder of the 77.5 per cent. should be spread against lands not sold under that act. 22.5 per cent. of the deficiency assessment should be spread as follows: 3.5 per cent. against the county at large, 2.5 per cent. against the township of Troy, 6.5 per cent. against the township of Royal Oak, and 10 per cent. against the village of Clawson.

This determination is in accord with the general principle stated by Mr. Justice Holmes in *Gast Realty & Investment Co.* v. *Schneider Granite Co.*, 240 U. S. 55 (36 Sup. Ct. 254, 60 L. Ed. 523).

"The legislature may create taxing districts to meet the expense of local improvements, and may fix the basis of taxation without encountering the 14th Amendment unless its action is palpably arbitrary or a plain abuse. * * * But * * * if the law is of such a character that there is no reasonable presumption that substantial justice generally will will be done, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred, the law cannot stand against the complaint of one so taxed in fact."

The declaratory judgment entered in the circuit court is modified and affirmed, and the cause is remanded for the entry of a judgment in conformity with this opinion. The question being a public one, no costs will be allowed. It is so ordered.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred.