## KEEFE ET AL. *v.* CLARK, DRAIN COMMISSIONER OF OAKLAND COUNTY, ET AL.

No. 634. Argued April 27, 28, 1944.—Decided May 22, 1944.

*Mr. Irvin Long,* with whom *Mr. Paul W. Voorhies* was on the brief, for appellants.

*Messrs. Harry J. Merritt* and *William C. Hudson* for appellees.

Briefs of *amici curiae* were filed by *Messrs. Wilber M. Brucker* and *Robert C. Winter* on behalf of Andrew Jergens, urging reversal; and by *Messrs. Herbert J. Rushton,* Attorney General, and *Daniel J. O'Hara,* Assistant Attorney General, on behalf of the State of Michigan, urging affirmance.

MR. JUSTICE BLACK delivered the opinion of the Court.

In this case appellants argue that certain provisions of two Acts passed by the Michigan legislature in 1937 are void in that, contrary to Art. I, § 10 of the United States Constitution, they impair the obligation of special assessment drain bonds issued in 1927, some of which are owned by appellants. The case is here on appeal from the Supreme Court of Michigan. 28 U. S. C. 344 (a).[1]

So far as here relevant, the two Acts[2] said to be unconstitutional provide that parcels of land subject to special assessment for drain projects may be sold for unpaid taxes, and also provide that the purchaser at such a sale shall be

---

[1] Appellees have moved to dismiss the appeal on the grounds that a federal question was not properly raised in the state courts. The record fails to sustain the motion and it is denied. See *Whitney* v. *California,* 274 U. S. 357, 360.

[2] Act 114, Mich. Pub. Acts of 1937, as amended by Act 282, Mich. Pub. Acts of 1939 and Act 234, Mich. Pub. Acts of 1941.

Act 155, Mich. Pub. Acts of 1937, as amended by Acts 29, 244, and 329 of Mich. Pub. Acts of 1939 and Act 363 of Mich. Pub. Acts of 1941.

granted a title free of all encumbrances, including all assessments for drain projects already constructed. The proceeds of each tax sale are applied towards payment of the unpaid drain assessment on the particular parcel of land, as well as towards payment of other delinquent taxes. Pursuant to these Acts, the State of Michigan has sold tax delinquent properties located in the drain district which issued appellants' bonds. The deeds of sale purport to release the properties from all encumbrances, including all assessments on account of the 1927 drain project.

Appellants do not contend that the challenged Acts impair any term of the contract printed on the face of their drain bonds. What they contend is that the Acts impair a right secured to them by a statutory provision which was the law of Michigan at the time their bonds were issued and which, they say, became a part of the bond contract. See *Von Hoffman* v. *City of Quincy,* 4 Wall. 535, 550. The statutory provision upon which they rely reads:

"If there is not sufficient money in the fund in a particular drain at the time of the maturity of the bonds last to mature to pay all outstanding bonds with interest, . . . it shall be the duty of the commissioner to at once levy an additional assessment as hereinbefore provided in such an amount as will make up the deficiency." Chapter X, § 18, Act 316, Mich. Pub. Acts of 1923, as amended by Act 331, Mich. Pub. Acts of 1927.

Appellants' argument is that this statute has given them an indefeasible right to have a deficiency assessment levied on each privately owned parcel of land in the drain district regardless of whether a particular parcel already has been sold at a tax sale and the proceeds applied toward payment of the drain bonds. In practical effect, they assert that by this statute lands subject to assessment for their drain bonds are subject to be sold not just once, but twice, for payment of the single benefit which the lands

received from the original drain project. Consequently, their argument runs, the Michigan legislature was powerless to provide that purchasers of tax-delinquent property in the drain district be exempt from a deficiency drain assessment.

This argument the Supreme Court of Michigan refused to accept. Emphasizing the serious consequences of such a hobbling of the State's powers to meet pressing problems, the Court pointed out that the power of the State to sell tax-delinquent lands free of the burden of assessments for completed drain projects was essential not only to protect the bondholders themselves but to protect the public interest. Without power in the State to offer an attractive title to prospective purchasers, the Court found, many of such lands would remain tax-delinquent and thereby be rendered valueless for all public revenue purposes, including drain assessments. The Court declined to read into the statute relied upon by appellants any purpose to permit drain districts to surrender the State's sovereign power to provide for the sale of tax-delinquent property free of encumbrances. It held that under the Michigan law in effect when appellants' special assessment drain bonds were issued the bondholders' "maximum security" for payment of assessments against drain district lands was the parcels of land themselves, and that when the bondholders received their fair share of the proceeds derived from the tax sale of any particular parcel they had received everything to which their bond contracts entitled them. *Keefe* v. *Oakland County Drain Comm'r,* 306 Mich. 503, 511–512, 11 N. W. 2d 220.

Before we can find impairment of a contract we must find an obligation of the contract which has been impaired. Since the contract here relied upon is one between a political subdivision of a state and private individuals, settled principles of construction require that the obligation alleged to have been impaired be clearly and unequivocally

expressed. This rule of construction applies with special force in the case at bar, for the interpretation of the bond contract urged by appellants would result in a drastic limitation upon the power of Michigan to enact legislation designed to remedy a situation obviously inimical to the interests of both municipal creditors and the general public.[3] "The continued existence of a government would be of no great value, if, by implications and presumptions, it was disarmed of the powers necessary to accomplish the ends of its creation." *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 548; and see *Gilman* v. *Sheboygan,* 2 Black 510, 513; *Fisher* v. *New Orleans,* 218 U. S. 438.

We do not find in the provision of the drain statute relied upon by appellants a clear and unequivocal purpose of Michigan to permit drain districts to bargain away the State's power to sell tax-delinquent lands free of encumbrances. Long before the date when appellants' bonds were issued, the Michigan Supreme Court had held that, "The general rule is that a sale and a conveyance (by the

---

[3] The Michigan Supreme Court has described vividly the intimate relation between the power of the State to remove encumbrances from tax-delinquent lands and the welfare of the public. *Baker* v. *State Land Office Board,* 294 Mich. 587, 592–594, 293 N. W. 763. Land speculation ran riot in Michigan in the 1920's, bringing with it construction of subdivisions, paving and drainage projects, etc. Inflated land values produced their inevitable consequences. In the early 1930's a large part of Michigan lands had a market value far less than the unpaid property and improvement taxes accumulated upon them. Attempting to remedy the situation, the legislature tried tax collection moratoriums, and for six years no tax sales were held, but still unpaid taxes continued to amass. Property owners abandoned their heavily encumbered real estate; the state and local governments could get no revenue from the delinquent property; and municipal creditors could get neither principal nor interest. All suffered alike. Finally in 1937, upon the recommendation of legislative committees and planning commissions, Acts 114 and 155, *supra,* Note 1, together with Act 325, were passed by the legislature in an attempt to collect unpaid taxes and to free property of its accumulated tax burden.

State) in due form for taxes extinguishes all prior liens, whether for taxes or otherwise. This rule is one of necessity, growing out of the imperative nature of the demand of the government for its revenues." *Auditor General* v. *Clifford,* 143 Mich. 626, 630, 107 N. W. 287; and see *Municipal Investors Assn.* v. *Birmingham,* 298 Mich. 314, 325–326, 299 N. W. 90, and cases there cited. The provision of the drain statute upon which appellants rest their case does not expressly purport to alter this "rule of necessity." On its face it deals only with the levy of an additional assessment in the event that drain bonds are not paid in full at maturity, and does not assume to deal with the manner of selling tax-delinquent properties in drain districts or the kind of title that can be conveyed at such sales. "The language falls far short of subjecting lots which have been sold to pay tax or assessment liens to an additional assessment for the deficit. Such a construction would defeat the remedy of tax sales as a means of realizing the assessment lien." *Municipal Investors Assn.* v. *Birmingham,* 316 U. S. 153, 159.

*Affirmed.*

Mr. Justice Roberts concurs in the result.

Mr. Justice Murphy took no part in the consideration or decision of this case.